Marian HUTNICK, Plaintiff/Appellant,

v.

Donald BEIL, Defendant/Respondent.

No. ED 79448.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 26, 2002.

Rehearing Denied May 23, 2002.

Melroy B. Hutnick, Belleville, IL, for appellant.

James H. Ferrick III, James E. Crowe, Kevin T. McLaughlin, St. Louis, MO, for respondent.

ROBERT E. CRIST, Senior Judge.

Marian Hutnick (Daughter) appeals from the judgment granting the motion to dismiss of defendant Donald Beil (Son). We affirm.

Daughter and Son are the children of Lillian E. Beil (Mother) and Joseph E. Beil (Father), deceased. Prior to Father's death, he set up the JEB Trust. After his death, Son and Mother became co-trustees of the JEB Trust. In addition, Mother set up her own trust, the LEB Trust, of which she is sole trustee.

On January 12, 2000, Daughter filed a petition in St. Louis County Circuit Court against Son and Mother, as well as another daughter and Mercantile Bank (for purposes of this appeal, we will call this first lawsuit *Hutnick I* ). In Count I, Daughter sought the removal of Son as a co-trustee of the JEB Trust, alleging Son had "intentionally and willfully ignored and violated his fiduciary duties and responsibilities to [Daughter] by embarking on a scheme to create disharmony within the Beil family for the purpose of alienating [Daughter] from her mother." In this count, Daughter made multiple allegations including: (1) Son concealed from Daughter Mother's move from Creve Coeur, Missouri to Roch-ester, New York; (2) Son made arrangements for the sale of Mother's home in Creve Coeur; (3) Son led Mother to believe that Daughter was going to sue her and instructed Mother not to discuss the JEB Trust with Daughter; (4) Son refused to communicate with Daughter except through his attorney; (5) Son planted a file at Mercantile Bank with false and misleading information about Daughter; (6) Son unduly influenced Mother; (7) Son failed to contact Daughter when he has brought Mother to St. Louis; (8) Son continues to use legal services of attorneys even after knowing of their misconduct and conflicts of interest; (9) Son exercised undue influence over Mother to get her to change her estate plans; (10) Son transferred more than two million dollars from the JEB Trust to himself; (11) Son wasted forty thousand dollars settling a lawsuit; (12) Son approved of fees paid to Mercantile Bank; and (13) Son persuaded Mother to modify her estate plan to exclude Daughter. Daughter also made multiple allegations that Son had caused assets of the trust to be removed and dissipated, as well as directing Mercantile Bank to refuse any explanation to Daughter.

In Count II, Daughter sought the removal of Mother as co-trustee of the JEB Trust, alleging she was under the "dominion and control" of Son and was incompetent to serve as a trustee. In Count III, Daughter sought the removal of Mother as trustee of the LEB Trust for the same alleged reasons in Count II. In Count IV, Daughter alleged tortious interference with a valid expectancy of inheritance by Son. She alleged Son had persuaded Mother not to give her an advance on her inheritance for a new house, which she alleged was the custom in the Beil family. She also alleged Son had persuaded Mother to transfer millions of dollars from the

JEB Trust to her own trust and then modify that trust to exclude Daughter.

On July 10, 2000, the circuit court dismissed Counts III and IV, finding Daughter did not have standing to bring them. Daughter appealed from this dismissal, but this Court granted Son's motion to dismiss because there was no final appealable judgment. *Hutnick v. Beil,* No. ED78295 (order dated January 11, 2001). Count II against Mother was eventually dismissed as moot after Mother resigned as co-trustee of the JEB Trust. Count I remains pending in the St. Louis County Circuit Court.

On October 12, 2000, Daughter filed a second lawsuit against Son in St. Louis County Circuit Court (*Hutnick II*). In this petition, Daughter sought five million dollars in damages from Son for breaching his fiduciary duty to her, a beneficiary of the trust. Daughter alleged Son: (1) withheld information about the JEB Trust; (2) prevented Daughter from obtaining information about the management of the trust; (3) assisted Mercantile Bank in planting information in their file to injure Daughter; (4) concealed from Daughter that Mother had resigned as co-successor trustee; (5) assisted Mercantile Bank in forcing Daughter to file lawsuits to obtain information; (6) made decisions about the JEB Trust that were to his own benefit; (7) concealed from Daughter that he used his position to cause Mother to change her estate plans; (8) approved of fees from the trust to Mercantile Bank; (9) transferred millions of dollars from the trust; (10) knew that Mercantile had been negligent in disposing of stock from the Lindner Fund; (11) knew attorney had committed legal malpractice in Father's estate; (12) failed to maintain $600,000 in the trust account; and (13) persuaded Mother not to provide funds to Daughter to buy a new house.

On November 21, 2000, Son filed a motion to dismiss Daughter's petition, alleging her present action was barred by res judicata and that Daughter had improperly split her cause of action. Attached to the motion to dismiss was a copy of the petition and the judgment in the first lawsuit. On April 11, 2001, the circuit court granted Son's motion to dismiss and dismissed Daughter's petition, but did not state the reasons for its dismissal. Daughter now appeals from this judgment.

In her two points on appeal, Daughter contends that the trial court erred in dismissing her petition, because neither *res judicata* nor the prohibition against splitting a cause of action would bar her second lawsuit. She contends that the trial court's judgment dismissing Count IV in *Hutnick I* for lack of standing did not have preclusive effect because it was not an adjudication on the merits.

 In his motion to dismiss, Son attached exhibits containing documents from the *Hutnick I*. The acceptance and consideration of these documents outside the pleadings transformed Son's motion to dismiss into a motion for summary judgment. Rule 55.27(a); *King General Contractors, Inc. v. Reorganized Church of Latter Day Saints,* 821 S.W.2d 495, 499 (Mo. banc 1991). In reviewing the propriety of summary judgment, we apply the same criteria as the trial court employs initially to determine the propriety of sustaining the motion. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Because the trial court's judgment is founded on the record submitted and the law, we do not defer to the trial court's order granting summary judgment and our review is *de novo. Id.*

 A movant is entitled to summary judgment if the motion for summary judg-

ment and the response show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(3). We view the record in the light most favorable to the party against whom summary judgment is entered and accord the nonmovant the benefit of all reasonable inferences from the record. *ITT Commercial Fin.*, 854 S.W.2d at 376. In this case, the question of whether Daughter's claim was barred by *res judicata* or whether she was improperly splitting her cause of action present only questions of law and thus, no genuine issue of material fact is disputed.

We find no merit to either of Daughter's points on appeal, because Daughter's second lawsuit was an improper attempt to split a cause of action. A cause of action that is single may not be split and filed or tried piecemeal. *Foster v. Foster*, 39 S.W.3d 523, 528 (Mo.App. E.D.2001). In general, the test for determining whether a cause of action is single is: (1) whether separate actions brought arise out of the same act, contract or transaction; or (2) whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. *Id.* The word "transaction" has a broad meaning and includes all the facts and circumstances out of which an injury arose. *Finley v. St. John's Medical Center*, 958 S.W.2d 593, 595 (Mo.App. E.D. 1998).

Count I in *Hutnick I* sought removal of Son as co-trustee and Count IV alleged tortious interference with Daughter's inheritance. The sole count of *Hutnick II* alleges Son breached his fiduciary duty to her and seeks further money damages. Almost every allegation in this petition contains essentially the same allegations as those set forth in Counts I and IV in *Hutnick I*. Moreover, all of the allegations pertain to the same conduct of Son in his position as trustee of the JEB Trust. Quite obviously, both actions arise out of the same act, conduct, or transaction. Daughter cannot bring multiple lawsuits against Son for actions arising out of the same conduct.

There are sound policy reasons for prohibiting a party from splitting a cause of action. "The rule against the splitting of a cause of action serves to prevent a multiplicity of suits and appeals with respect to a single cause of action, and is designed to protect defendants against fragmented litigation, which is vexatious and costly. The rule also implements a public and judicial policy applied by federal and state courts to foster the efficient and economic administration of the judicial system, by forestalling an undue clogging of court dockets." 1A C.J.S. Actions section 177 (1985). Here, Daughter has already clogged this Court with two appeals, both of which arose out of the same facts. Daughter's remedy is not to file another lawsuit when she does not like the result of the first one. Moreover, in this case, her lawsuit in *Hutnick I* is still pending, at least as to Count I. Presumably, Daughter will get a resolution on Count I and will be able to appeal the judgment dismissing Counts III and IV at that time. Points I and II are denied.

The judgment is affirmed.

CLIFFORD H. AHRENS, P.J., and GEORGE W. DRAPER, III, J. concur.