Larry A. BAGSBY, Respondent,

v.

Tina K. GEHRES, Appellant.

No. ED 80062.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 27, 2004.

---

James A. Bax, St. Louis, MO, for appellant.

Timothy Hogan, St. Louis, MO, Patrick Berrigan, Kansas City, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Tina K. Gehres ("Defendant") appeals the judgment entered in favor of Larry A. Bagsby ("Plaintiff") in his action for dissolution of partnership, unjust enrichment, detrimental reliance, accounting, restitution, equitable lien, constructive trust and fraudulent conveyance. We reverse and remand with directions to dismiss the petition without prejudice.

Defendant's third point is dispositive. In that point Defendant contends that the trial court erred in denying her motion to dismiss on the ground that Plaintiff impermissibly split his cause of action in that the instant claims duplicate those asserted in a previously-filed suit pending in federal court. We agree.

Plaintiff originally filed suit against Defendant in the United States District court in Southern California, which later transferred the case to the Eastern District of Michigan, where most if not all of the named defendants resided. In that suit, Plaintiff alleged that he and Defendant were divorced in a decree of dissolution entered in St. Charles County in April of 1999. In the decree, Plaintiff was awarded, as his separate property, all interest in his law practice "whether the case was pending or concluded." Defendant, who was also an attorney, relinquished all claims for any work she may have performed on such cases. The decree provided that it could only be modified in a writing signed and sworn to by both parties.

After the decree was entered, Plaintiff and Defendant began to reconcile their personal relationship. Although Defendant had relocated to California, the parties spoke daily by telephone. In these conversations, Defendant expressed a desire to practice law with Plaintiff in California and expressed dissatisfaction with her present employment. In June of 1999, Plaintiff reached a settlement agreement in a case (the "Kilbury case") pending at the time of the dissolution decree. The proposed settlement involved structured settlements and annuities. Plaintiff asked Defendant to assist him in determining the present value of the proposed settlement and Defendant performed about four hours of work providing Plaintiff with the requested information. Defendant per-

formed such services while working for her present employer, with its knowledge and consent. No bill was sent to Plaintiff for such services, and he likewise provided research to Defendant's employer from time to time without charging for his time.

In July of 1999 the Kilbury case did reach a final settlement agreement. Plaintiff anticipated receiving an attorney's fee of $850,000.00 in early August. In late June and early July, Plaintiff and Defendant agreed to begin a law practice in California. Defendant obtained Plaintiff's approval to buy a house in California to be purchased from Plaintiff's anticipated fee from the Kilbury case. Defendant requested $83,000.00 from Plaintiff for down payment on a house, purchase of a new facsimile and scanner for the law practice and her rent for the month of August so she could work part time and devote time to establishment of the law practice. Defendant also recommended the parties establish an account for the law practice accessible only by joint written authorization of both parties. In late July, Defendant told Plaintiff that she had searched for office space and obtained lease estimates. Defendant estimated that total expenses for the new practice would be $2,000.00 per month.

In August of 1999, Plaintiff received his fee from the Kilbury case and wired Defendant the $83,000.00 she requested. Plaintiff also sent Defendant a check for $354,500.00 to be deposited in a joint account. However, prior to depositing the check and opening the account, Defendant contacted her parents and asked them to search for a new house for her to purchase in early September in Michigan, where they also lived. Her father contacted a real estate agent to find potential homes. Upon receipt of the $83,000.00 wire transfer, Defendant began paying off her personal debts. She sent $14,000.00 to her parents to pay off jointly held debts.

Plaintiff had retained the funds from the Kilbury case in Missouri to pay income taxes on the fee and to fund a third partnership in Boulder, Colorado. However, at Defendant's request, these funds were gradually transferred into the joint account so that Defendant could prepare the tax-statements.

In August 1999 Plaintiff and his daughter traveled to California to vacation with Defendant and her children. During that week Defendant took Plaintiff to a brokerage office to become a signatory on the joint, restricted account. Also during that week, Plaintiff and Defendant jointly transferred $11,650.00 from the account as a down payment for a home for which they had contracted to purchase.

After Plaintiff returned to Missouri, Plaintiff transferred the remaining fees from the Kilbury case, an additional $350,000.00, to the joint account at Defendant's request. He also sent Defendant $350.00 to reimburse her for a home inspection. That same day, Defendant began secretly removing funds from the joint account.

The joint account was not completely restricted to require two signatures. When Defendant opened the account, she had established a secret PIN number which allowed her to remove funds by telephone wire transfers. Over the course of three days, she removed the entire $354,000.00 originally deposited in the account. The money was first transferred to Defendant's personal checking account at another California bank. Defendant then transferred the money into three accounts in Michigan that were held jointly with members of Defendant's family. Defendant then moved to Michigan and engaged in a series of covert actions with family

members designed to place the money beyond Plaintiff's reach.

After alleging the foregoing detailed facts, the petition in the federal suit asserts claims for declaratory relief, conversion, civil conspiracy, Fraudulent Conveyances Act, fraud, civil RICO, breach of contract, money had and recovered, unjust enrichment, constructive trust and accounting. The named defendants are Defendant, several members of her family, a Michigan realtor and his company, Defendant's California attorney, Defendant's former California employer, the California Franchise Tax Board and the Internal Revenue Service.

The federal court in California denied Plaintiff's request for an injunction and, on its own motion, transferred the case to the federal court in Michigan. That court ordered mediation. Then, approximately a year after the federal suit was filed, Plaintiff filed the instant suit naming only Defendant.

The facts alleged in the underlying state court action are that between the beginning of May and the end of August 1999, Plaintiff and Defendant entered into an agreement to practice law in Missouri, California and Colorado. Defendant traveled to Missouri three times to transact business in furtherance and spoke to Plaintiff daily for partnership purposes. Pursuant to the agreement, Plaintiff was to fund the partnership with the proceeds of a settlement he obtained in an Illinois case totaling approximately $850,00.00. Besides Plaintiff and Defendant, Mr. David Angle was to be a practitioner in the partnership.

Defendant made arrangements to obtain an office lease and advertising estimates and began working part-time in her other employment. Defendant informed Plaintiff that the new law practice would have an estimated monthly expense of $2,000.00. Defendant informed Plaintiff they needed a new computer, scanner and facsimile which would cost $2,000.00. Defendant also informed Plaintiff she would need $1,000.00 per month for rent so she could work part-time and devote time and effort to the partnership.

Pursuant to the partnership agreement, Plaintiff transferred to Defendant a capital contribution of $354,000.00 which Defendant deposited into a joint account as tenants in common. Plaintiff and Defendant also agreed to purchase a residence in California with a down payment of $80,000.00. Plaintiff wired $83,000.00 to Defendant's personal account to be used for the down payment, purchase of the computer and related equipment and payment of Defendant's monthly rent. Plaintiff later transferred the balance of the Illinois settlement to the joint account so Defendant could prepare the estimated tax payment on the entire settlement amount. Defendant was to further establish IRA accounts, SEP accounts and KEOGH accounts for Plaintiff, herself and David Angle.

Within three weeks of receiving all of the funds Plaintiff had transferred to Defendant, she converted the $83,000.00 for her personal expenses. She also removed $354,000.00 from the joint account and transferred those sums to Michigan for her personal use. She then moved to Michigan. The petition then details the alleged transfer of the funds to family members, joint accounts, and other diversions of the funds in Michigan, just as alleged in the federal petition. After alleging the foregoing facts, the state petition then asserts claims for dissolution of partnership, unjust enrichment, detrimental reliance, accounting, restitution, equitable lien, constructive trust and fraudulent conveyance.

A cause of action that is single may not be split or tried piecemeal. *Foster v. Foster*, 39 S.W.3d 523, 528 (Mo.App. 2001). In general, the test for determining whether a cause of action is single is: (1) whether separate actions brought arise out of the same act, contract or transaction; or (2) whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. *Hutnick v. Beil*, 84 S.W.3d 463, 466 (Mo. App.2002). The word "transaction" has a broad meaning and includes all the facts and circumstances out of which an injury arose. *Id.* As the court observed in *Hutnick*, there are sound policy reasons for prohibiting a party from splitting a cause of action. *Id.* The rule against splitting a cause of action serves to prevent a multiplicity of suits and appeals with respect to a single cause of action, and is designed to protect defendants against fragmented litigation, which is vexatious and costly. The rule also implements a public and judicial policy applied by federal and state courts to foster the efficient and economic administration of the judicial system by forestalling an undue clogging of the courts. *Id.* (quoting 1A C.J.S. Actions, section 177 (1985)).

The facts of *Hutnick* are particularly instructive. Daughter brought suit against Son, Mother, another daughter and Mercantile Bank. 84 S.W.3d at 464. In Count I of her petition, Daughter sought removal of Son as co-trustee of a family trust alleging he had willfully ignored and violated his fiduciary duties and responsibilities to her by creating disharmony in the family for the purpose of alienating Daughter from Mother. The petition detailed various specific acts by Son and included numerous allegations that Son had removed and dissipated trust assets and had directed Mercantile Bank to refuse any explanation to Daughter. *Id.*

In Count II of the petition Daughter sought to remove Mother as co-trustee of the same trust alleging she was under the dominion and control of Son and was incompetent to serve. Count III sought removal of Mother as trustee of a different trust on the same grounds. *Id.* In Count IV, Daughter alleged tortious interference with a valid expectancy of inheritance by Son. *Id.* She alleged that Son had persuaded Mother not to give her an advance on her inheritance for a new house and that he had persuaded Mother to transfer funds from one trust to another and then exclude her from the trust. *Id.* at 464–65.

The circuit court dismissed Counts III and IV, finding that Daughter lacked standing to bring them. Daughter's appeal of that ruling was dismissed for lack of a final judgment. *Id.* at 465. Count II was later dismissed as moot. *Id.*

Although the original Count I against Son remained pending, Daughter filed a second suit against Son seeking money damages for breaching his fiduciary duties to her as a beneficiary. *Id.* The petition set forth essentially the same allegations asserted in Counts I and IV of the original suit. *Id.* Son moved to dismiss alleging *res judicata* and that Daughter had improperly split her cause of action. *Id.* The trial court sustained the motion and Daughter appealed. *Id.*

On appeal, this court observed that the issue of whether Daughter had improperly split her cause of action was a question of law. *Id.* at 466. The court held that all of the allegations of both Count I and IV of the original suit and the allegations in the second suit pertained to the same conduct of Son in his capacity as trustee of the family trust. *Id.* Thus, they arose out of the same act, conduct or transaction. *Id.* Daughter was held to be properly barred from bringing multiple lawsuits against Son for actions arising out of the same

conduct. *Id.* Thus, dismissal of the second action was affirmed.

■ Likewise in the instant case, the pending federal case in Michigan and the state case filed in Missouri arise out of the same alleged partnership agreement and Defendant's conduct in removing the money from the joint account in California. Both seek recovery of the same disputed funds. Plaintiff has clearly split his cause of action and is not permitted to simultaneously pursue multiple lawsuits against the same defendant seeking recovery of the same disputed funds.

Plaintiff urges that he does not fall within the test for splitting a cause of action because the parties are different and the claims are different. Plaintiff points out that the Michigan suit involves eleven named defendants whereas the instant suit names only Ms. Gehres as Defendant. *Hutnick* also had multiple defendants in the first suit. The fact that the same cause of action was being asserted against Son in both suits was the dispositive issue. The fact that the original cause of action against Son was joined with different causes of action against other defendants was irrelevant. Moreover, Plaintiff overlooks the fact that the claims against the other defendants in the Michigan case are completely derivative of his cause of action against Defendant. If Defendant prevails in her contention that she was entitled to the funds, Plaintiff has no claim against the remaining defendants.

Plaintiff also urges that the claims asserted in the two cases are different. We disagree. The claims asserted in the two cases present different legal theories but are all based on the same cause of action, i.e. the alleged partnership agreement and Defendant's conduct in transferring the disputed funds for her personal benefit. Should Plaintiff prevail on one or more counts alleged in either petition, he will be entitled to but one recovery.

Plaintiff's reliance on *State ex rel Todd v. Romines,* 806 S.W.2d 690 (Mo.App.1991) is clearly misplaced. In *Todd,* the relator filed a wrongful death action against Pagano and his security firm based on Pagano's conduct in shooting her husband, a fellow employee of the security firm. *Id.* at 690. Relator also filed a separate action against the security firm and two insurance companies to impose a constructive trust on the proceeds of two insurance policies the security firm had taken out on her husband's life. *Id.* The suits were filed in different counties. Although venue was proper in the different counties, the defendants in the constructive trust suit claimed that relator had improperly split her cause of action. This court found that the causes of action were clearly separate and distinct. Although the shooting was common to both actions, the relator was not simply asserting different legal theories to obtain the same recovery as is the case here.

In its judgment, the trial court observed that it was unable to afford Plaintiff complete relief on his claim because the parties to which Defendant allegedly transferred the money were not before the court. This was all the more reason why this duplicative and vexatious action should have been dismissed. It wastefully sought adjudication of claims against Defendant that would still have to be relitigated in Michigan if Plaintiff is to recover his money because the Michigan defendants to whom Defendant allegedly transferred the money would not be bound by a judgment to which they were not a party.

We hold that the trial court erred in denying Defendant's motion to dismiss this case for improperly splitting a single cause of action. The judgment is reversed and

the cause is remanded with directions to dismiss the petition without prejudice.[1]

BOOKER T. SHAW, P.J., and PATRICIA L. COHEN, J., Concur.

---

1. Although Defendant seeks dismissal with prejudice, our disposition does not constitute an adjudication of the merits of Plaintiff's claims, which he may, of course pursue in the pending Michigan case.