Larry A. BAGSBY,
Petitioner/Respondent,

v.

Tina K. GEHRES,
Respondent/Appellant.

No. ED 85351.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 28, 2005.

Benicia Baker–Livorsi, The Family Law Group LLC, St. Charles, MO, for respondent.

Tina K. Gehres, Lincoln, MI, appellant acting pro se.

KATHIANNE KNAUP CRANE, Judge.

This is an appeal from three judgments entered on September 7, 2004: 1) A Judgment and Order of Contempt that found respondent guilty of indirect civil contempt for filing an affidavit in support of her motion for summary judgment in a case pending in the U.S. District Court for the Eastern District of Michigan and for claiming entitlement to funds that were the subject of litigation in that case; 2) A Judgment and Order and Warrant of Commitment ordering respondent jailed until she purged herself of contempt; and 3) A Judgment of Permanent Injunction enjoining respondent from filing an affidavit in the federal case that "contradicted" the parties' separation agreement and from making claims on the funds in litigation in the federal court. We reverse and remand to the trial court with directions to dismiss the cause of action for lack of subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties to this case, petitioner, Larry A. Bagsby, and respondent, Tina K. Gehres, are former spouses and former law partners. Their marriage was dissolved in the Circuit Court of St. Charles County in April, 1999. Pursuant to the parties' separation agreement, the dissolution decree awarded petitioner, as his separate property, all of his interest in his law practice.

In July, 1999, after the dissolution, petitioner settled a lawsuit and received a $1,000,000 legal fee. Petitioner then wired $83,000 to respondent and sent her a check in the amount of $354,500 in connection with the parties' attempts to reconcile the marriage and the start of a new law partnership. Respondent deposited the $354,500 into a joint account at Smith Barney, and petitioner subsequently transferred an additional $355,000 into the account. The parties quarreled, and petitioner threatened to withdraw all of the funds forwarded to respondent. Respondent then transferred $354,500 out of the joint account. Petitioner demanded that respondent return the $83,000 and $354,500, but she refused.[1]

*1999 Federal Lawsuit*

In the fall of 1999, petitioner filed a lawsuit in the U.S. District Court for the Southern District of California, where respondent was then living, to recover the $83,000 and $354,500, naming respondent, her family members, attorney, former employer, a real estate agent, the California Franchise Tax Board, and the Internal Revenue Service (IRS) as defendants. He alleged that he had sent respondent those amounts so she could make a down payment on a house and to fund a new law practice that the two had agreed to start. He further alleged that he sent her additional amounts so that she could prepare and file the income tax statements on the

---

1. These background facts are taken from the findings of the court in a June 22, 2000 final judgment entered after trial in *In re Marriage of Larry A. Bagsby and Tina K. Gehres,* Cause No. CV 198–7256OR, Circuit Court of St. Charles County, another contempt action petitioner filed against respondent. For clarity, we point out that the numbers have not been consistent in the various lawsuits. The fee has also been alleged to be $850,000, and the initial amount deposited into and withdrawn from the Smith Barney account has also been alleged to be $354,000.

fee.[2]

The federal district court in California denied petitioner's request for a preliminary injunction. In its order, it recited that the parties did not dispute that respondent had spent the $83,000 on personal debts and had removed the $354,000 that had been deposited into a Smith Barney joint account to other accounts under her control and eventually used some of the funds from the Smith Barney account to pay the IRS. This lawsuit was transferred to the U.S. District Court for the Eastern District of Michigan because respondent had moved to Michigan.[3]

*1999 St. Charles County Contempt Motion*

In December, 1999, petitioner filed a motion for contempt in the Circuit Court of St. Charles County on the grounds that respondent had violated the terms of the dissolution decree by retaining the $437,500 ($83,000 and $354,500) that he voluntarily paid her after dissolution. On June 22, 2000, after a trial, the trial court denied the motion and entered a judgment in respondent's favor. It concluded that although the $1,000,000 fee became petitioner's separate property after dissolution, petitioner was free to do what he wanted with it after dissolution, including transferring the funds to respondent. It specifically concluded:

> 14. Whether one accepts Wife's contention that she "earned" the funds after the dissolution of the parties' marriage, or whether one accepts Husband's contention that Wife is unlawfully retaining the funds after abandoning their new personal and business enterprises, it is

clear that neither party's claim to the funds is rooted in the Judgment of April 28, 1999. Whatever other remedies may be available to Husband to recover the funds transferred to Wife, civil contempt is not one of them.

No appeal was taken from this judgment.

*2000 St. Charles County Lawsuit*

On August 8, 2000, while the federal litigation was still pending, petitioner filed another lawsuit against respondent in the Circuit Court of St. Charles County, also to recover on various theories the $354,000 and $83,000, which petitioner alleged had been transferred to respondent, along with other funds, pursuant to an agreement to establish a law partnership and fund it with the August 1999 fee, and to make a down payment on a home. He alleged that he transferred the remainder of the fee to respondent so she could prepare the estimated tax payment on the original fee. He alleged that she converted the $83,000 and $354,000 for her own use. The trial court entered judgment for petitioner, and respondent appealed to this court.

On June 16, 2004, while the appeal was pending, the Circuit Court of St. Charles County entered another judgment in that case and awarded petitioner $197,975.30 in attorney's fees. On July 9, 2004, again while the appeal was still pending, the circuit court entered a judgment of contempt against respondent in the same case. On July 29, 2004, we issued a Preliminary Order in Prohibition ordering the trial judge not to proceed further on either of these matters, except to withdraw any capias warrants for respondent's arrest.

---

**2.** A more detailed summary of the allegations is contained in *Bagsby v. Gehres,* 139 S.W.3d 611, 612–14 (Mo.App.2004).

**3.** While this appeal was pending, on February 16, 2005, the federal district court in Michigan granted respondent's motion for summary judgment, finding that she did not convert the $83,000 and $354,000 because petitioner had unconditionally transferred those funds to respondent after dissolution. This judgment is now on appeal to the United States Court of Appeals for the Sixth Circuit.

On July 27, 2004, we handed down our opinion in the appeal from the original judgment. *Bagsby,* 139 S.W.3d 611. We reversed the judgment in favor of petitioner and remanded with instructions to dismiss his petition without prejudice because petitioner had an action against respondent pending in the federal district court in Michigan that arose from the same alleged post-dissolution partnership agreement and respondent's withdrawal of the funds from the Smith Barney joint account, and which also sought recovery of the same funds. *Id.* at 616–17.

On September 28, 2004, we handed down our opinion making the Preliminary Order in Prohibition absolute. *State ex rel. Gehres v. Schneider,* 144 S.W.3d 903 (Mo.App. 2004). We held that the court had no jurisdiction to award attorney's fees after the expiration of the thirty day period prescribed in Rule 75.01, while the case was pending on appeal. *Id.* at 904. We also found that the court could not enforce by its order of contempt the judgment found invalid in *Bagsby,* 139 S.W.3d at 616–17. *Gehres,* 144 S.W.3d at 904–05.

*2004 St. Charles County Motion for Contempt/Petition for Injunction*

On August 4, 2004, one week after we handed down our opinion in *Bagsby,* 139 S.W.3d 611, petitioner filed a verified motion for contempt and a petition for temporary restraining order and injunction against respondent in the Circuit Court of St. Charles County. In both his motion for contempt and his petition for permanent injunction, petitioner alleged that respondent had filed an affidavit in the federal lawsuit in Michigan that was contrary to the parties' separation agreement and that respondent had refused to release funds held by the IRS that had been divided in the parties' separation agreement.

On the same day, the trial court issued a show cause order to respondent and or-

dered her to appear on September 7, 2004 to show cause why the contempt motion should not be granted. It also issued an "ORDER TO APPEAR ON HEARING FOR TEMPORARY RESTRAINING ORDER" that ordered her to appear on September 7, 2004 "to answer Petitioner's petition for a temporary restraining order."

On August 30, 2004, respondent filed a motion to dismiss the motion and petition with a supporting brief and exhibits that included the final judgment. She also filed a motion to continue the hearing.

Respondent did not appear at the hearing on the temporary restraining order and permanent injunction on September 7, 2004. The docket does not reflect that the trial court entered an order advancing and consolidating the trial on the merits with the September 7, 2004 hearing. However, on September 7, 2004, the trial court entered the three judgments against her.

In its Judgment and Order of Contempt, the trial court found respondent in indirect civil contempt for filing an affidavit in the federal case that, it concluded, violated the terms of the separation agreement and by claiming entitlement to funds that had been divided in the settlement agreement, including funds held by the IRS. It found that petitioner had incurred attorney's fees on the contempt motion in the amount of $200,253.34. It sentenced respondent to "imprisonment" in the St. Charles County jail "until such time as she elects to adhere fully to" the 1999 dissolution decree. It ordered that respondent could purge herself of contempt by paying petitioner $200,253.34, withdrawing her affidavit in the federal case, relinquishing claims to funds held in escrow by the IRS, and providing a copy of the contempt judgment and permanent injunction to all courts, including the federal court in Michigan, in which the parties' claims were pending. It ordered her to refrain from claiming any

entitlement to the disputed funds in the federal litigation for any work she did prior to dissolution and to pay a fine of $500.00 a day for each day after September 9, 2004 that she failed to purge herself of contempt.

In its Judgment and Order and Warrant of Commitment, the trial court ordered respondent arrested and held in jail until she purged herself of contempt, based on the same findings it had made in its contemporaneous Judgment and Order of Contempt. It conditioned her release on the same conditions set out in its Judgment and Order of Contempt.

In its Judgment of Permanent Injunction, the trial court found that respondent had filed an affidavit in the federal court making claims to funds that were divided in the marital settlement agreement and that petitioner would "be irreparably harmed in the federal litigation if this injunction is not issued." It permanently barred respondent from asserting a claim of entitlement to any funds in any case in which petitioner was counsel of record prior to the dissolution of the parties' marriage and from making a claim to "funds on deposit with the IRS" in the amount of $121,976.00.

## DISCUSSION

On appeal, respondent asserts that the trial court made numerous procedural and substantive errors in entering the three judgments against her. Before we reach the merits of this appeal, we must *sua sponte* determine whether we have jurisdiction. *Riverside–Quindaro v. Intercontinental*, 121 S.W.3d 531, 533 (Mo. banc 2003); *Govern. e–Management v. American Arbitrat.*, 142 S.W.3d 857, 860 (Mo.App.2004). Our jurisdiction is predicated on that of the trial court. *Govern. e–Management*, 142 S.W.3d at 860. If the trial court did not have jurisdiction over this action, any judgment entered thereon would be void, and we would have no jurisdiction except to reverse the judgment and remand the cause for dismissal. *Id.*

Whether or not the trial court had subject matter jurisdiction over a cause is an issue of law which we review *de novo*. *In re Marriage of Jeffrey*, 53 S.W.3d 173, 175 (Mo.App.2001).

A state court lacks subject matter jurisdiction to control the action, process, or proceeding in a federal court. *Viehweg v. Mello*, 8 S.W.3d 187, 188–89 (Mo.App.1999). This rule is "not altered by the fact that the injunction sought by [petitioner] was addressed to [r]espondent rather than the federal court itself." *Id.* A state court has no power to enjoin a litigant from proceeding in a pending or prospective *in personam* action in federal court. *General Atomic Co. v. Felter*, 434 U.S. 12, 17–19, 98 S.Ct. 76, 78–79, 54 L.Ed.2d 199 (1977); *Donovan v. City of Dallas*, 377 U.S. 408, 411–13, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964). By the same measure, a state court may not hold a litigant in contempt for pursuing a right to federal-court remedies. *Donovan*, 377 U.S. at 413–14, 84 S.Ct. at 1583.

Here, petitioner sought to enjoin respondent from and hold her in contempt for filing an affidavit in support of her summary judgment motion and asserting claims in the federal case. All of the relief granted by the trial court was designed to prevent respondent from litigating her claims in the federal lawsuit that had been pending for five years. The trial court did not have subject matter jurisdiction to grant this relief, *Viehweg*, 8 S.W.3d at 188–89, and its judgment is void. *Govern. e–Management*, 142 S.W.3d at 860.

We reverse the judgment and remand to the trial court with directions to dismiss the action.[4]

PATRICIA L. COHEN, P.J. and
ROBERT G. DOWD, JR., J. concur.

---

4. Respondent's motion to add the memorandum opinion and order of the federal court

for the Eastern District of Michigan in *Bagsby v. Gehres,* No. 00–CV–10153 BC, 195 F.Supp.2d 957 (E.D.Mich. 2002) to the legal file is granted. Petitioner's motion to strike this opinion from the legal file is denied.

Petitioner's motion to strike respondent's brief is denied.