

# In the
# Missouri Court of Appeals
## Western District

DANNY WALKER,

      Appellant-Respondent,

v.

A1 SOLAR SOURCE INC., ET AL.,

      Respondents;

GREENSKY, INC., GREENSKY
HOLDINGS, LLC, GREENSKY LLC,
AND MIDLAND STATES BANCORP,
INC.,

      Respondent-Appellants.

**WD84673**

**Consolidated with WD84702**

**OPINION FILED:**

**AUGUST 23, 2022**

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Patrick W. Campbell, Judge**

**Before Division Four: Gary D. Witt, Chief Judge, Presiding, Anthony Rex Gabbert, Judge,
Stacey J. Lett, Special Judge**

Danny Walker appeals the circuit court's Judgments which dismissed his claims of, 1) violations of the Missouri Merchandising Practices Act ("MMPA"), civil conspiracy, unjust enrichment, and request for declaratory and injunctive relief against defendants A1 Solar Source, Inc., Laura Tyson and Deleon Tyson, Sr. ("A1 Solar/Tyson" collectively); 2) violations of the MMPA, civil conspiracy, FTC Holder Rule liability, Missouri Consumer Lending Laws violations, Missouri Credit Services Organization Acts violations, and request for declaratory and injunctive

relief against defendants GreenSky, LLC, GreenSky, Inc., and GreenSky Holdings, LLC ("GreenSky" collectively), and; 3) violations of the MMPA, civil conspiracy, FTC Holder Rule liability, and request for declaratory and injunctive relief against Midland States Bancorp, Inc. ("Midland").  On appeal, Walker contends that the circuit court, 1) erred in dismissing his MMPA-related claims because neither res judicata nor collateral estoppel bar them in that no final judgment on the merits has ever been entered by any court on those claims, 2) erred in finding res judicata bars his MMPA-related claims against GreenSky because that rule, which does not apply when a subsequent case arises out of a new ultimate fact, is inapplicable in that the vital ultimate fact the *Walker I* court found absent is present in *Walker II*, and 3) erred in finding collateral estoppel bars Walker's MMPA-related claims against A1 Solar because that rule, which does not apply to any unresolved new fact or theory, is inapplicable in that the *Walker I* court did not make any finding or ruling on whether Walker has a triable MMPA claim now that he has made payments on the GreenSky loan.

A1 Solar/Tyson has moved to dismiss Walker's appeal against A1 Solar/Tyson, arguing that, because Walker's general negligence claim incorporates facts from the dismissed claims, and arises from the same set of facts, transactions, and occurrences, the circuit court's Judgment did not dispose of a distinct judicial unit and an interlocutory appeal is, therefore, inappropriate.

GreenSky cross-appeals, arguing that the circuit court abused its discretion in denying GreenSky's motion for sanctions and in failing to award attorneys' fees to GreenSky under the MMPA.

We dismiss Walker's appeal of the circuit court's Judgment which regards A1 Solar/Tyson, affirm the circuit court's Judgments dismissing Walker's claims against GreenSky and Midland, and deny GreenSky's/Midland's point on cross-appeal.

**Background and Procedural Information**

In the light most favorable to Walker's dismissed claims, the facts as alleged by Walker are that he is an elderly, legally blind man who lives on a limited income. In the summer of 2016, A1 Solar called Walker with a sales pitch for the installation of solar panels on his home. The voicemail A1Solar left assured Walker that "free money" was available to those who purchased its solar systems. Walker returned the call and an A1 Solar representative soon arrived at his home for a consultation. Carrying his white cane and explaining his visual impairment, Walker answered the door and let A1 Solar's agent inside.

A1 Solar's agent advised Walker that the solar panel system would cost $25,000, but Walker would really only have to pay $10,000, because he would receive $15,000 in government incentives that would be paid in three $5,000 installments. In subsequent visits, A1 Solar had Walker sign several documents, even though its agents did not interpret the documents properly for Walker. Walker was told that the $10,000 he was responsible for would be financed exclusively through the Hero/Pace loan program A1 Solar offered its clients through a company called Renovate America. Instead, A1 Solar completed a "GreenSky Installment Loan Agreement" in Walker's name in the amount of $15,000. The agreement called for the loan proceeds to be paid to A1 Solar. The interest rate was 22.99%.

GreenSky provides merchants the ability to obtain loans on behalf of consumers with instantaneous funding. GreenSky-program loans are funded by GreenSky's partner banks, one of which is Midland. Midland funded the loan that was completed in Walker's name. Walker alleges that he never agreed to obtain a loan through GreenSky or Midland, and never signed any document applying for or authorizing the loan. GreenSky and Midland, nevertheless, funded the loan and the proceeds were paid to A1 Solar.

3

A1 Solar purchased the solar panel system and later began installation on Walker's roof. During installation, A1 Solar informed Walker that he needed to make an upgrade costing approximately $1,500 so the system would work properly. A1 Solar then completed another retail installment contract in Walker's name, this time through Renovate America, for Walker to cover this added cost and the remaining $10,000 of the solar panels. Walker alleges that A1 Solar never made the upgrade. When Walker learned that the solar panels were never connected to the electric company's power grid, Walker contacted Renovate America, which canceled the $11,500 installment loan.

A short time later, Walker learned for the first time that a GreenSky loan had been taken out in his name. A bill for $15,000 was sent to Walker by GreenSky. The transaction date on the bill was September 9, 2016, which was the date the GreenSky loan proceeds of $15,000 were paid to A1 Solar. The bill informed Walker that he would have "zero liability for transactions [he did] not authorize." Cancellations would be made, the document promised, if requested within sixty days. Within a month of receiving the bill, Walker informed GreenSky that he had not agreed to the loan and requested that it be canceled. Walker alleges that, during the ensuing investigation, GreenSky's representatives acknowledged Walker had not authorized the loan, but the loan was never canceled.

On November 14, 2016, A1 Solar sent Walker a letter declaring the contract between him and A1 Solar "null and void" and stating that A1 Solar would schedule a time to remove its equipment. This never occurred, and on December 16, 2016, A1 Solar filed a mechanic's lien on Walker's home in the amount of $17,979.55. Walker alleges that, at the time, A1 Solar (which had represented to Walker that he would only have to pay $10,000) had only $12,000 in material expenses and had received the $15,000 proceeds from the GreenSky loan.

4

**Walker I**

In 2018, Walker filed suit against A1 Solar alleging violations of the MMPA ("*Walker I*") (Case No. 1816-CV09233). In his Second Amended Petition, Walker added Midland and GreenSky, LLC as defendants, and included additional claims. In Count I, Walker alleged that all defendants violated the MMPA by engaging in deceptive, unfair, and fraudulent business practices. In Count II, Walker alleged that A1 Solar negligently installed the solar panels. Count III was a civil conspiracy claim asserting that the three defendants conspired to commit the unlawful acts outlined in Count I. Count IV alleged that GreenSky and Midland were liable for A1 Solar's unlawful conduct in inducing Walker to purchase and install solar panels under the Federal Trade Commission's Holder Rule. Count V asked the court to declare the GreenSky loan null and void and direct the defendants to remove the loans from Walker's credit reports with all three primary credit reporting agencies.

The defendants asserted cross-claims against one another, which remain pending. With regard to Walker's claims, the defendants moved for summary judgment. On April 24, 2020, the circuit court issued its "Judgment/Order" granting GreenSky's and Midland's motions and dismissing Walker's claims against them, with prejudice. On April 28, 2020, the circuit court issued its "Judgment/Order" granting A1 Solar's motion as to Counts I, III, IV, and V, but denying summary judgment to A1 Solar on Walker's negligence claim (Count II). The court's reasoning for the dismissals of Walker's MMPA claims surrounded the fact that the elements of an MMPA claim are that a person has, 1) purchased merchandise; 2) for personal, family, or household purposes; 3) and suffered an ascertainable loss of money or property; 4) as a result of an act declared unlawful by Section 407.020. (Citing *Kerr v. Vatterott Educ. Ctrs., Inc.*, 439 S.W.3d 802

5

(Mo. App. 2014); MAI 39.01).  The court found that Walker could not show that he had purchased merchandise, as it was undisputed that Walker had not paid any defendant for anything.

On May 15, 2020, Walker made his first payment of $401.66 to GreenSky, LLC, and has since made additional payments.

On August 10, 2020, Walker voluntarily dismissed "all his remaining claims, including the General Negligence portion of Count II, without prejudice."  Although Walker was, at that point, no longer a party to the action, Walker did not pursue an appeal of the court's judgments against him.

**Walker II**

On August 25, 2020, Walker again filed suit against A1 Solar, Midland, and GreenSky, LLC., and additionally named GreenSky, Inc., GreenSky Holdings, LLC, Laura Tyson, and DeLeon Tyson, Sr. as defendants ("*Walker II*").   Walker's petition acknowledged the court's *Walker I* rulings, but alleged that the claims in *Walker II* were "separate from those in the previous litigation" because Walker had since made payments to GreenSky and, therefore, Walker met the elements for the new MMPA claims.  Walker's petition alleged violations of the MMPA against A1 Solar/Tyson in Count I; violations of the MMPA against GreenSky and Midland in Count II; general negligence against A1 Solar in Count III; negligent supervision against Deleon Tyson, Sr. in Count IV; civil conspiracy against A1 Solar, GreenSky, and Midland in Count V; FTC Holder Rule liability against Midland and GreenSky in Count VI; violations of Missouri Consumer Lending Laws against GreenSky in Count VII; violations of the Missouri Credit Services Organization Act against GreenSky in Count VIII; requests for declaratory and injunctive relief against A1 Solar, GreenSky, and Midland in Count IX, and; unjust enrichment against A1 Solar in Count X.

6

All defendants moved to dismiss, arguing that Walker's MMPA claims, and those derived therefrom, were barred by the doctrines of collateral estoppel and res judicata because the Judgments in *Walker I* resolved those claims. In response, Walker argued that the ultimate facts are different than those in *Walker I* – namely that he had made payments on the loan since the *Walker I* Judgments were issued.

On February 16, 2021, the circuit court granted the defendants' motions and dismissed all of Walker's claims, except for his negligence claims against A1 Solar/Tyson. Approximately two months after Judgments were entered, Walker filed an "Amended Notice of Voluntary Dismissal Without Prejudice" in *Walker I* stating that he was voluntarily dismissing without prejudice all of his claims in *Walker I*, including the MMPA-related claims for which the court had entered "interlocutory orders partially granting dispositive motions filed by each of the defendants." The defendants moved to strike Walker's motion, and the motion to strike was granted by the court. Prior to the court striking Walker's dismissal attempt, however, Walker asked the court to reconsider its Judgment in *Walker II*, arguing that the court's "interlocutory orders in *Walker I* were nullified by Walker's Rule 67.02(a) dismissal before any final judgment was entered." Walker argued that because he voluntarily dismissed his case without prejudice before final judgment was entered (the defendants' cross-claims against each other remained), it was as if he had never filed the *Walker I* case at all. He contended that, as such, the summary judgments entered in the prior case could have no preclusive effect. Alternatively, Walker asked the court to certify its ruling as final and appealable under Rule 74.01(b). The court denied Walker's request for reconsideration, but amended its Judgments to include certification under Rule 74.01(b). On July 30, 2021, the circuit court denied GreenSky's motion for sanctions (filed December 16, 2020) and the defendants' motions for attorney fees (filed March 17, 2021).

7

This appeal follows.

## A1 Solar's/Tyson's Motion to Dismiss Appeal

As a preliminary matter, A1 Solar/Tyson moves to dismiss Walker's appeal as to A1 Solar/Tyson arguing that the circuit court's judgments were not eligible for Rule 74.01(b) certification in that the Judgments did not resolve a distinct judicial unit because the dismissed claims and remaining negligence claim arise from the same set of facts, transactions, and occurrences, and Walker incorporated facts from the dismissed claims into the sole remaining claim of general negligence. Walker disagrees and argues that the circuit court properly exercised its discretion under Rule 74.01(b) to certify its judgments because the court's legal determinations on the MMPA-related claims have nothing in common with the issues or material facts on Walker's remaining negligence claim against A1 Solar.

"The legislature has set out what rulings can be appealed in section 512.020." *Butala v. Curators of University of Missouri*, 620 S.W.3d 89, 93 (Mo. banc 2021). As relevant here, section 512.020(5) provides that an appeal may be taken from a final judgment. *Id.* "Rule 74.01(a) requires that a final judgment be in writing, signed by the judge and expressly denominated a 'judgment.'" *Butala*, 620 S.W.3d at 93. Rule 74.01(b) further provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.

A "judgment" exists where at least one claim in a lawsuit is fully resolved, and all the rights and liabilities of the parties with respect to that claim is established. *Butala*, 620 S.W.3d at 93. This includes orders that dispose of all claims against one party. *Id.*

8

A judgment that disposes of all issues and remedies against at least one party *per se* disposes of a judicial unit and is a final judgment under section 512.020 without regard to whether the remaining issues and remedies arise from a distinct transaction or occurrence. A judgment may be certified under Rule 74.01(b) as a "final judgment" for purposes of section 512.020(5). The distinctness of transactions or occurrences matters only when the judgment appealed from does not resolve all legal issues and remedies against any one party. It is only when the judgment does not resolve all legal issues and remedies related to any one party that there must be a judicial unit for appeal that arises from sufficiently distinct transactions or occurrences to be eligible for certification under Rule 74.01(b).

*Id.* at 94 (internal citations omitted). "[A] judgment resolving one or more claims but leaving one or more claims unresolved is eligible for certification under Rule 74.01(b) as a 'final judgment' for purposes of section 512.020(5) only if it disposes of a 'judicial unit' of claims." *Wilson v. City of St. Louis*, 600 S.W.3d 763, 769 (Mo. banc 2020). "[T]he first alternative meaning of 'judicial unit' is a judgment that disposes of all claims by or against one or more – but fewer than all – of the parties." *Id.* "The second alternative meaning of 'judicial unit' is a judgment that resolves one or more claims that are ***distinct*** from those claims that remain to be resolved." *Id.* (Emphasis original). "In other words, a judgment resolves a 'distinct' judicial unit if it resolves claims that do not arise 'from the same set of facts, and the same transactions and occurrences, as the counts' yet to be disposed of in the circuit court." *Id.* (quoting *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997)).

Here, Walker's negligence claim against A1 Solar alleges that A1 Solar failed to exercise ordinary care when installing solar panels on his home and installed the solar panels in a "poor manner", including that A1 Solar failed to install collar ties, all of which resulted in split rafters and a leaky roof. Walker's MMPA claim against A1 Solar alleges in paragraph #264 that A1 Solar violated the MMPA by, among other things, 1) failing to complete the upgrade for which they invoiced Walker (subparagraph f), 2) telling Walker that the work installing the solar panels, which

9

would include the attic bracing, had been completed when it had not (subparagraph g), and 3) damaging Walker's roof and failing to repair it (subparagraph i). Paragraph #267 alleges that because of A1 Solar/Tyson's violations of the MMPA, Walker "suffered ascertainable loss in the form of substantial damage to his roof, which was perpetrated by A1 Solar."

We find that, aside from Walker incorporating all facts from the dismissed claims into the negligence claim, Walker's petition itself evidences that the dismissed MMPA claims and remaining negligence claim arise from the same set of facts, transactions, and occurrences, as the allegations establishing Walker's negligence claim against A1 Solar are separately included in Walker's MMPA claim against A1 Solar. The circuit court's judgments pertaining to A1 Solar, therefore, did not dispose of a distinct judicial unit and was not a final judgment eligible for Rule 74.01(b) certification for appeal. A1 Solar's/Tyson's motion to dismiss is granted, and Walker's appeal of the judgments related to A1 Solar is dismissed. As such, we need not address Walker's third point on appeal which solely regards A1 Solar.

**Walker's Point I – Final Judgment and Res Judicata/Collateral Estoppel**

In Walker's first point on appeal, he contends that the circuit court erred in dismissing his MMPA claims in *Walker II*, arguing that neither res judicata nor collateral estoppel bar them in that no final judgment on the merits, which is required for either doctrine to apply, has ever been entered by any court on those claims. GreenSky and Midland assert that the judgments of the circuit court in *Walker I* were final, and Walkers claims in *Walker II* are barred by res judicata.

We find that Walker waived this claim by essentially averring to the circuit court and all parties that the *Walker I* judgments were final, and never arguing prior to this appeal that neither res judicata nor collateral estoppel could bar his *Walker II* claims because there was no final judgment on the merits in *Walker I*.

10

Paragraph #225 of Walker's *Walker II* petition alleges that, "This petition details some allegations and facts that have already been partially litigated." The petition goes on to detail that summary judgment was entered against Walker and in favor of all defendants on Walker's MMPA and derivative claims. Walker alleges that he was, nevertheless, entitled to file the MMPA claims again because Walker's payments to GreenSky after those summary judgments were entered created a new ultimate fact. Walker made these same arguments in response to the defendants' motions to dismiss in *Walker II*, and never argued anything different until the court granted the defendants' motions for dismissal. Even then, four-and-a-half months later in Walker's "Motion to Reconsider or, in the Alternative, to Certify under Rule 74.01(b)," Walker's argument was not the same as he makes on appeal. His argument was that, because he voluntarily dismissed all of his claims in *Walker I* after the court entered summary judgment against him on his MMPA claims, but while cross-claims between the defendants were still pending, it was as if *Walker I* never happened and he was entitled to refile the MMPA claims. Up until then, Walker consistently argued that he was entitled to file the new MMPA claims because they contained a new ultimate fact, and that the *Walker I* MMPA claims were no longer pending because they had been resolved by summary judgment rulings.

When Greensky, LLC moved to consolidate *Walker I* and *Walker II*, Walker argued, among other things, that "there are no ***pending*** claims which are common with this action because the only claims in *Walker I* that are still pending are for indemnity and contribution amongst the Defendants." (Emphasis original). Walker argued that, "On January 15, 2020, Defendants A1, Midland, and GreenSky filed motions for judgment on the pleadings and for summary judgment. Those motions were ruled upon in April 2020, with all of Plaintiff's claims being dismissed, save for his general negligence claim." Walker continued: "On August 10, 2020, Plaintiff voluntarily

11

dismissed his only remaining claim in *Walker I*, the general negligence claim. This left **pending** only Defendants' crossclaims and third-party claims, which are limited to indemnity and contribution." (Emphasis original). In continuing to argue against consolidation, Walker additionally stated: "While Plaintiff acknowledges that the claims he makes in this case are similar to those that he previously made in *Walker I*, the claims he previously made in *Walker I* are no longer '**pending before the court**.' GreenSky even acknowledges this when it contends that 'all the causes of action Plaintiff asserted against GreenSky' were 'fully disposed of' and that 'Plaintiff chose not appeal this ruling.'" (Emphasis original).

The appellate court "will generally not convict a lower court of error on an issue that was not put before it to decide." *Smith v. Shaw*, 159 S.W.3d 830, 835 (Mo. banc 2005). By failing to raise an argument in the trial court, a party waives the issue on appeal. *Id.* Walker never argued to the trial court, as he does on appeal, that there was no final judgment in the *Walker I* MMPA claims. Walker, therefore, has waived his claim on appeal that the *Walker II* MMPA claims could not be barred by the doctrines of res judicata and collateral estoppel because the *Walker I* judgments were not final.[1]

Walker has additionally waived his arguments, made in the body of his brief but not in a point relied on, that his voluntary dismissals of the *Walker I* claims under Rule 67.02(a) render the

---

[1] If the judgments were not final, the MMPA claims in *Walker I* and the MMPA claims in *Walker II* were, therefore, simultaneously pending. Consequently, unless the MMPA claims in *Walker II* could be considered separate from the MMPA claims in *Walker I*, which will be discussed in a following point on appeal, the prohibition against claim splitting would have then been grounds to dismiss Walker's MMPA claims in *Walker II*. "[W]here actions are simultaneously pending, claim splitting is a distinct (and narrower) affirmative defense that is ripe for immediate assertion, even though the broader defense of res judicata cannot be asserted until there is a prior adjudication." *Steinbach v. Maxion Wheels Sedalia LLC*, 637 S.W.3d 493, 510 (Mo. App. 2021). Although this affirmative defense becomes subject to the exception of acquiescence if the simultaneous claims are not objected to on the basis of claim splitting, the defendants here would have had no reason to raise the affirmative defense of claim splitting where Walker averred in his *Walker II* petition, and argued thereafter, that the *Walker I* judgments were final and/or no longer pending. *See Id.*

12

*Walker I* summary judgment rulings nonexistent. Issues raised only in the argument portion of the brief and not contained in a point relied on are not preserved for appellate review. *Hawley v. Tseona*, 453 S.W.3d 837, 842 n.6 (Mo. App. 2014).

Point I is denied.

### Walker's Point II – Res Judicata on Claims Against GreenSky/Midland

In Walker's second point on appeal, he contends the circuit court erred in finding res judicata bars his MMPA-related claims against GreenSky and Midland, arguing that res judicata does not apply when a subsequent case arises out of a new ultimate fact. Walker contends that the vital ultimate fact the *Walker I* court found absent is present in *Walker II*, in that Walker has now made payments on the loan.

> *Res judicata*, a Latin phrase meaning 'a thing adjudicated', prohibits a party from bringing a previously litigated claim. *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. banc 2002). The modern term is 'claim preclusion.' *Id.* Claim preclusion also precludes a litigant from bringing, in a subsequent lawsuit, claims that *should* have been brought in the first suit. *Id.* As such, the doctrine applies to 'every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.' *King General Contractors, Inc.*, 821 S.W.2d 495, 501 (Mo. banc 1991).

> Improper splitting of claims occurs when a party sues on a claim which arises out of the same 'act, contract or transaction' as the previously litigated claims. *Id.* A court should also consider 'whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions.' *Grue v. Hensley*, 357 Mo. 592, 210 S.W.2d 7, 10 (1948). If the claim does arise out of the same 'act, contract or transaction', the claim is barred by the original judgment under the doctrine of claim preclusion. *Chesterfield Village, Inc.* at 319. The rule against splitting a claim for relief serves to 'prevent a multiplicity of suits and appeals with respect to a single cause of action, and is designed to protect defendants against fragmented litigation, which is vexatious and costly.' *Bagsby v. Gehres*, 139 S.W.3d 611, 615 (Mo. App. 2004).

*Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 715-716 (Mo. banc 2008). The prohibition against claim splitting additionally applies to duplicate claims which are simultaneously pending. *Steinbach*, 637 S.W.3d at 510.

"[A] court must look to the factual bases for the claims, not the legal theories, when determining whether claims may be split." *Kesterson*, 242 S.W.3d at 716. "In order for a subsequent claim on the same transaction to be considered separate, however, there must be new ultimate facts, as opposed to evidentiary details, that form a new claim for relief." *Id*. "Ultimate facts are those the jury must find to return a verdict for the plaintiff." *R.M.A. by Appleberry v. Blue Springs R-IV School District*, 568 S.W.3d 420, 425 (Mo. banc 2019). In a private lawsuit for violation of the MMPA, a plaintiff must demonstrate that the plaintiff (1) purchased merchandise (which includes services) from the defendants; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the MMPA. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. banc 2007).

In *Walker I*, Walker alleged in Paragraph 43 that, "The sale, or purported sale, of the solar panels by A1 SOLAR to Danny was a transaction covered by the MMPA, and the sale was primarily for personal, family, or household purposes." In Paragraph 63, Walker alleged that "Plaintiff's actual damages include the damage to his roof, the diminution of value of his home, damage to his credit from the unauthorized taking of the GreenSky loan, and emotional distress." Walker did not expressly allege in *Walker I* that he *purchased* merchandise or services from the defendants. The defendants argued in support of summary judgment that Walker could not prove that he purchased anything because he had not paid anything. Walker conceded that he had not made any payments to the defendants, but argued that a "purchase can occur when there is an

14

exchange of something that is the 'equivalent of money'" and that "indirect" payments were sufficient. The record reflects that the parties argued the issue extensively, and while Walker was clearly aware of the possibility that the court could disagree that Walker's evidentiary facts met the "purchase" element, Walker stood by his position and did not pursue an appeal after the court issued its judgments.

Walker essentially created new evidentiary details after the adverse ruling to support filing the new claims, but nothing in the record shows that Walker could not have, using reasonable diligence, established these evidentiary details in *Walker I*. In *Walker I*, Walker alleged that on or about October 7, 2017, GreenSky and/or Midland began demanding that Walker send monthly payments of $401.66. The initial *Walker I* petition was filed April 9, 2018, well after the payment demands commenced. Walker only began making payments several years later, after the court ruled in *Walker I* that the "purchase" element of the MMPA claims were unmet. Moreover, in both *Walker I* and *Walker II*, that Walker made a "purchase" was an ultimate fact the jury would have been required to find to return a verdict in favor of Walker; the details of how that "purchase" took place are evidentiary.

The circuit court did not err in finding Walker's MMPA-related claims against Greensky and Midland barred by res judicata. Point two is denied.

### GreenSky/Midland's Cross-Appeal – Denial of Sanctions

In GreenSky's/Midland's sole point on cross-appeal, GreenSky/Midland contend that the circuit court abused its discretion in denying their Motions for Sanctions and in failing to award attorney's fees under the MMPA, arguing that the evidence conclusively demonstrates sanctionable conduct in that Walker's counsel paid a retained expert to breach GreenSky's/Midland's proprietary database and reveal confidential and proprietary information,

15

and then utilized that information to bolster its claims in this suit.  Walker counters that, 1) the rulings regarding sanctions and attorneys' fees are not appealable because they were not certified by the court under Rule 74.01(b) that "there is no just reason for delay," 2) that GreenSky's/Midland's point on appeal is multifarious and should be dismissed, and 3) that the court did not abuse its discretion in denying sanctions or attorney fees to GreenSky/Midland.

First, Walker does not dispute that the circuit court's judgment dismissing all claims by Walker against GreenSky/Midland in *Walker II* were final, appealable judgments.  Walker, in fact, asked that those judgments be certified for appeal.  As the contested court's rulings regarding sanctions and attorneys' fees were made in relation to the dismissed claims that are being appealed by Walker, review herein is appropriate and it is not necessary that those rulings be independently certified for appeal.

Nevertheless, we agree with Walker that GreenSky's/Midland's point on cross-appeal is multifarious and in violation of Rule 84.04(d), which requires each distinct claim of error to be raised in a separate point.  A point relied on is 'multifarious' in violation of Rule 84.04, and preserves nothing for appellate review, when it contains multiple, independent claims." *Macke v. Patton*, 591 S.W.3d 865, 869 (Mo. banc 2019).  The court's separate ruling regarding sanctions and separate ruling regarding attorneys' fees were based on separate motions which addressed different issues.  GreenSky's and Midland's appeal of these two rulings raises two independent claims in one point relied on, and we decline to exercise our discretion to review these claims of error.

GreenSky's/Midland's point on cross-appeal is denied.

16

**Conclusion**

We conclude that, 1) Walker waived his claim that the circuit court erred in dismissing his MMPA claims because no final judgment on the merits had been entered as Walker never averred, prior to this appeal, that the *Walker I* judgments were not final, 2) the circuit court did not err in finding that res judicata bars Walker's MMPA-related claims against GreenSky/Midland in that *Walker II* does not arise out of a new ultimate fact as Walker's loan payments are an evidentiary detail that goes to the ultimate fact of whether a purchase occurred, and 3) Walker's points on appeal which regard A1 Solar/Tyson are dismissed as interlocutory and lacking a distinct judicial unit for appeal. We affirm the circuit court's Judgments dismissing Walker's claims against GreenSky and Midland, and deny GreenSky's/Midland's point on cross-appeal.


_____
Anthony Rex Gabbert, Judge


All concur.

17