# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 09-1965

_____

William H. Pippin; Lola Jean Pippin,    *
   *
Appellants,    *
   *
   *    Appeal from the United States
v.    *    District Court for the
   *    Eastern District of Missouri.
Hill-Rom Company, Inc.,    *
   *
Appellee.    *

_____

Submitted: January 12, 2010
Filed: August 2, 2010

_____

Before SMITH and COLLOTON, Circuit Judges, and KORNMANN,[1] District Judge.

_____

COLLOTON, Circuit Judge.

William and Lola Jean Pippin brought suit against Hill-Rom Company, Inc. ("Hill-Rom"), seeking recovery for an injury incurred by William Pippin at Hill-

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

Rom's facility in St. Joseph, Missouri. The district court[2] granted summary judgment for Hill-Rom, and the Pippins appeal. We affirm.

I.

William Pippin ("Pippin") and his wife Lola Jean Pippin ("Lola") are independent truckers who since 1993 have contracted with Landstar Express America, Inc. ("Landstar"). Landstar is a non-forced dispatch trucking company, meaning that when it receives a request from a shipper and assigns that request to a trucker, the trucker is always free to decline the load. The Pippins initially drove a cargo van. They purchased a straight truck (also known as a six-wheeler) in 1997, because there was a higher demand for loads requiring that type of vehicle than for the cargo van. About a year after purchasing the truck, Pippin installed a liftgate, which allowed him to accept loads of heavy freight originating at locations that did not have loading docks. Because "liftgate jobs" were more profitable than regular loads, and only a few Landstar contractors drove trucks with liftgates, the installation of the liftgate enabled Pippin to increase his earnings. The principal items that he transported with the help of the liftgate were hospital beds and gaming machines.

On September 8, 2002, the Pippins accepted an assignment of transporting three hospital beds for Hill-Rom from its facility in St. Joseph, Missouri, to Tempe, Arizona. At the time he accepted the load, Pippin knew that the use of his liftgate would be required, but he did not realize that he would be responsible for loading the beds onto his truck.

After arriving at the Hill-Rom facility the next morning, the Pippins were greeted by a Hill-Rom employee named Alan Karguth. Karguth asked Pippin to back

[2]The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

his truck up to the side of the loading area. While doing so Pippin noticed that the parking lot gradually sloped off away from the building, so that his front axle was lower than the rear axle as he backed in. He manually set the air brakes on his truck to prevent rolling, but he did not think that this slope would prove problematic in loading the beds onto the truck.

Pippin and Karguth then rolled the first bed out of the storage facility and to the truck. Pippin testified that he thought Karguth would help him load the beds, but after the two men together rolled the first bed onto the liftgate, Karguth backed away. Pippin loaded the first bed without incident and resolved to finish the loading by himself. Karguth helped him roll the second bed out of the building and onto the liftgate, and again stepped away. As Pippin began to push the bed off the liftgate and onto the truck, it started to roll away from him toward the front of the truck. To prevent this bed from hitting the bed already in the truck, Pippin attempted to use his right foot to activate the bed's pedal brake. Just as he activated the brake, causing the bed to stop its slide, he was jerked off-balance and wrenched his back. At the time, he thought that he had just pulled a muscle, and he proceeded to load the third bed.

The Pippins then began their drive to Tempe, but Pippin's back pain soon became severe. They completed the Hill-Rom assignment by having Lola do most of the driving, and the couple then accepted several more assignments until they found one that brought them back home to Missouri. Pippin ceased driving for Landstar and subsequently underwent a variety of medical tests and treatments for his back. He incurred extensive medical bills and lost income due to an inability to work.

In August 2007, the Pippins filed suit against Hill-Rom in the Circuit Court of Buchanan County, Missouri. The complaint alleged that Hill-Rom acted negligently by failing to provide a reasonably safe loading area and by failing to load the beds. The complaint further asserted that Hill-Rom negligently instructed Pippin to position his truck on an inclined surface and then to load the beds onto that truck, when it knew

or reasonably should have known that it was not safe to do so. The second count of the complaint was a loss of consortium claim brought by Lola Pippin. After the suit was removed to federal court, Hill-Rom moved for summary judgment, and the district court granted the motion.

## II.

To prevail in a negligence action under Missouri law, a plaintiff must establish that (1) the defendant owed him a duty of care, (2) the defendant breached that duty, and (3) he suffered an injury proximately caused by the defendant's breach. *Lopez v. Three Rivers Elec. Coop.*, 26 S.W.3d 151, 155 (Mo. 2000) (en banc). "Whether a duty exists is purely a question of law," suitable for determination on summary judgment. *Id.* The district court concluded that Hill-Rom did not owe a duty to Pippin, and granted summary judgment on that basis. We review the district court's grant of summary judgment *de novo*, viewing the facts in the light most favorable to Pippin. *Gentry v. Georgia-Pacific Corp.*, 250 F.3d 646, 649 (8th Cir. 2001).

## A.

Pippin argues first that Hill-Rom owed him a duty of care under the Transportation Agreement between Hill-Rom and Landstar, because under Missouri law, that contract gave rise to a tort duty. The relevant provision of the Agreement reads in part:

> Loading Responsibility. Except as otherwise provided in writing prior to the time of dispatch, shipments transported by Carrier must be loaded by Shipper and unloaded by consignee from or on Carrier's vehicle(s).

Pippin contends that Hill-Rom breached its contract with Landstar by failing to load its beds onto the truck, and that the breach of that contract also constituted a breach of Hill-Rom's duty to Pippin.

Under Missouri law, a breach of contract alone does not gives rise to a tort. The Missouri courts have recognized a distinction between negligence and non-performance of a contract obligation. A mere failure to complete the undertaking required by contract does not give raise to a cause of action in tort; the remedy for such a failure lies in contract. *Preferred Physicians Mut. Mgmt. Group v. Preferred Physicians Mut. Risk Retention*, 918 S.W.2d 805, 814 (Mo. Ct. App. 1996); *Harzfeld's, Inc. v. Otis Elevator Co.*, 114 F. Supp. 480, 483 (W.D. Mo. 1953). To establish a negligence claim, a plaintiff must show negligent misfeasance, such as "the failure to exercise due care in the performance of contract undertakings, *as distinguished from mere failure to complete such undertakings*." *Preferred Physicians*, 918 S.W.2d at 814 (quoting *Harzfeld's*, 114 F. Supp. at 483). "If absent a contract the act would not be a tort, the mere breach of an agreement will not create one." *Khulusi v. Sw. Bell Yellow Pages, Inc.*, 916 S.W.2d 227, 230 (Mo. Ct. App. 1995). Pippin's contention is that Hill-Rom failed to load the beds as required by its Transportation Agreement with Landstar. This mere failure to perform under the contract cannot support Pippin's negligence action.[3]

---

[3]Pippin attempts to buttress his argument that the Transportation Agreement gives rise to his tort claim by asserting that he can recover in tort as a third-party creditor beneficiary of the Agreement between Hill-Rom and Landstar. He did not raise this argument in the district court, however, and "[w]e will not entertain a new argument on appeal from the grant of summary judgment." *Berg v. Norand Corp.*, 169 F.3d 1140, 1145 (8th Cir. 1999). In any event, a party may recover as a third-party beneficiary only if "the terms of the contract . . . express directly and clearly an intent to benefit" that party, *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.*, 75 S.W.3d 247, 260 (Mo. 2002) (en banc) (internal quotation omitted), and the agreement between Hill-Rom and Landstar does not express such an intent.

B.

In addition to his contract-based argument, Pippin argues that Hill-Rom owed him a duty of care under general negligence law. Pippin contends that because Alan Karguth had experience with loading beds for Hill-Rom, and understood that beds tended to roll toward the front of a truck after they were loaded, the danger that Pippin faced was foreseeable to Karguth and Pippin. This foreseeability, Pippin contends, gave rise to a duty of Hill-Rom to help Pippin load the beds, or at least to warn him of the danger.

Assuming that Karguth could foresee a danger to Pippin, "foreseeability alone is not enough to establish a duty." *Stitt ex rel. Stitt v. Raytown Sports Ass'n*, 961 S.W.2d 927, 930 (Mo. Ct. App. 1998). There must also be "some right or obligation to control the activity which presents the danger of injury." *Id.* Pippin has not established that Hill-Rom had such an obligation. Pippin was an independent contractor, and Hill-Rom did not control his activities. Pippin chose to load the beds, moreover, despite the obvious weight of the beds and his knowledge that the truck was parked on an incline. There was no "hidden or secret peril here involved," *Ecker v. Big Bend Bank*, 407 S.W.2d 45, 47 (Mo. Ct. App. 1966), and Hill-Rom did not have a legal duty to warn Pippin of that which he should have known.

Pippin argues alternatively that the slope of the parking lot was a dangerous condition that triggered a duty of Hill-Rom. This contention sounds in premises liability rather than general negligence law. *See Haney v. Fire Ins. Exch.*, 277 S.W.3d 789, 791 (Mo. Ct. App. 2009) (per curiam). Premises liability is triggered when the claimed cause of injury is a dangerous condition of the property on which the injury occurred, but "[s]uch liability generally is limited to those who own or control the property." *Id.* Hill-Rom did not own or control the parking lot. Its facility is located in an industrial park owned by Mitchell Woods, LLC. Hill-Rom rented its unit under a lease stating that Mitchell Woods reserved to itself all rights and interests in the

common areas on the property, including the parking lot. Mitchell Woods also expressly retained the responsibility for paving, lighting, and landscaping the parking area. Hill-Rom is thus not liable for injuries resulting from the condition of the lot.

Premises liability, moreover, does not attach when the relevant dangerous condition is "so open and obvious that the invitee should reasonably be expected to discover it and realize the danger." *Harris v. Niehaus*, 857 S.W.2d 222, 226 (Mo. 1993) (en banc). Pippin realized before he began loading beds that the parking lot sloped, and he manually set the air brakes on his truck in response. His experience of loading the first bed on the truck confirmed his earlier observation. The parking lot's slope was thus open and obvious as a matter of law, and Pippin cannot recover from Hill-Rom on a premises liability theory.

Hill-Rom did not owe a duty of care to Pippin under its Transportation Agreement with Landstar or under Missouri tort law, and the district court properly dismissed Pippin's negligence claim. Because Lola Pippin's claim for loss of consortium is derivative of Pippin's negligence claim, *Wright v. Barr*, 62 S.W.3d 509, 537 (Mo. Ct. App. 2001), the failure of the negligence claim disposes of Lola's claim as well. Accordingly, we affirm the judgment of the district court.

_____