# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 13-0110

_____

**FILED**

**June 5, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
TOBBY LYNN SMALL,
Petitioner

V.

HONORABLE RUSSELL M. CLAWGES, JR.,
JUDGE OF THE CIRCUIT COURT OF MONONGALIA COUNTY;
JAMES R. RAMSEY, SR.; VIRGINIA E. RAMSEY;
WILLIE MCNEAL, JACK B. KELLEY, INC.; AND
AMERIGAS PROPANE, LP,
Respondents

_____

Petition for a Writ of Prohibition

WRIT GRANTED

_____

Submitted: May 15, 2013
Filed: June 5, 2013

Jeffrey S. Zurbuch                    Mark F. McKenna
Peter G. Zurbuch                      McKenna & Associates, P.C.
Busch, Zurbuch & Thompson             James A. Villanova
Elkins, West Virginia                 Michael E. Metro
Attorneys for the Petitioner          Villanova Law Offices, P.C.
                                      Pittsburgh, Pennsylvania
                                      Attorneys for the Respondents,

James R. Ramsey, Sr., and Virginia E. Ramsey

Peter T. DeMasters
Lindsey M. Saad
Flaherty Sensabaugh Bonasso, P.L.L.C.
Morgantown, West Virginia
Attorneys for the Respondents, Willie McNeal; Jack B. Kelley, Inc.; and Amerigas Propane, L.P.

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving the absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syllabus point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      "A state court has no jurisdiction to enjoin a proceeding or judgment of a federal court.  The jurisdictions are separate and independent, and it is essential to the independence and efficiency of each that they be exempt from interference and control one by the other."  Syllabus point 3, *Henderson v. Henrie*, 61 W. Va. 183, 56 S.E. 369 (1907).

**Per Curiam:**

i

This proceeding was brought under the original jurisdiction of this Court by Tobby Lynn Small, the petitioner herein and defendant below, seeking a writ of prohibition to prevent enforcement of an order of the Circuit Court of Monongalia County. The circuit court's order precluded Mr. Small from raising a compulsory counterclaim defense against the respondents herein and plaintiffs below, James R. and Virginia E. Ramsey. Here, Mr. Small argues that the circuit court improperly ordered him not to raise the defense of untimely assertion of a compulsory counterclaim in a federal action; improperly determined that he had waived the compulsory counterclaim defense in the circuit court proceeding; and committed legal error by failing to apply the doctrine of res judicata to the circuit court litigation. After a careful review of the briefs and the record submitted in this case, and listening to the arguments of the parties, we grant the requested writ of prohibition.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This case arose out of a multi-vehicle accident on Interstate 79 in Lewis County, West Virginia, on February 20, 2009. On that date, Mr. Small lost control of his Jeep SUV on an icy bridge and ended up in the center median of the highway. Mr. Small got out of his vehicle while in the center median. At some point after Mr. Small exited his vehicle, a Nissan SUV, that Mr. Ramsey was driving, was struck by a tractor trailer, that

1

Willie McNeal was operating.[1] The tractor trailer impacted and broke loose a cable guardrail in the center median. The cable guardrail struck Mr. Small and caused him severe injuries.

As a result of the accident, Mr. Small filed an action against Mr. Ramsey and the other defendants in the Circuit Court of Harrison County in June 2010. Mr. Small's case was removed to federal court based upon diversity jurisdiction in August 2010.[2] Thereafter, in June 2011, Mr. Ramsey and his wife filed the instant action against Mr. Small and others[3] in the Circuit Court of Monongalia County.[4] Mr. Small filed a motion to dismiss the case on the grounds that Mr. Ramsey failed to file a compulsory counterclaim in Mr. Small's federal action. The circuit court denied the motion to dismiss but ordered Mr. Ramsey to file a counterclaim in Mr. Small's federal case.[5] The circuit court also ordered Mr. Small to not object to Mr. Ramsey's motion to amend his answer so he could file a counterclaim in federal

---

[1]The tractor was owned by Mr. McNeal's employer, Jack B. Kelley, Inc. The trailer was owned by Amerigas Propane. Mr. McNeal; Jack B. Kelley, Inc.; and Amerigas Propane are defendants below and respondents in this proceeding. These three respondents have filed a joint summary response to the petition for writ of prohibition.

[2]The case was removed to the federal court in Clarksburg, West Virginia.

[3]The other defendants were Mr. McNeal; Jack B. Kelley, Inc.; and Amerigas Propane.

[4]The Ramseys' action originally was filed in the federal court in Elkins, West Virginia. The case was dismissed because of lack of complete diversity.

[5]The circuit court stayed the litigation pending the outcome of the federal case.

2

court.[6]

In October 2011 Mr. Ramsey filed a motion in Mr. Small's federal case seeking leave to amend his answer to assert a counterclaim.[7] As a result of the circuit court's order, Mr. Small filed a motion with the federal court seeking permission to file a response to Mr. Ramsey's motion. Mr. Small argued to the federal court that the circuit court's order was unlawful because it violated the Supremacy Clause of the federal constitution. The federal court entered an order granting Mr. Small's motion to file a response. Thereafter, Mr. Small filed a response opposing the motion to amend the answer on the grounds that the amendment was outside the scheduling order time frame for the filing of a motion to amend. The federal court denied the motion to amend as untimely. Prior to the trial of Mr. Small's federal case, Mr. Ramsey settled, but the other defendants did not.[8] On July 9, 2012, a jury returned a verdict in favor of Mr. Small.[9]

On October 8, 2012, Mr. Small filed an answer to Mr. Ramsey's circuit court

[6]The circuit court also ordered Mrs. Ramsey to file a motion to intervene in the federal case. The order further prohibited Mr. Smith from objecting to the motion to intervene.

[7]Mrs. Ramsey did not file a motion to intervene.

[8]The record does not indicate the terms of the settlement.

[9]Although Mr. Ramsey settled, his name remained on the verdict form. The jury apportioned fault in the case as follows: Mr. Ramsey–60%; Mr. McNeal–23%; and Mr. Small–17%.

3

complaint. On October 19, 2012, Mr. Small filed a motion for summary judgment. In the motion, Mr. Small argued that Mr. Ramsey waived his claim against Mr. Small because the action had to be brought as a counterclaim under Rule 13 of the Federal Rules of Civil Procedure. He was also argued that the doctrine of res judicata precluded Mr. Ramsey's claim. Mr. Small further contended that Mrs. Ramsey's loss of consortium claim was derivative of Mr. Ramsey's claim and also had to be brought in federal court. The circuit court denied the summary judgment motion ruling that Mr. Small had waived the asserted issues because he had disobeyed the court's order and had contested Mr. Ramsey's motion to amend his answer to file a counterclaim. Subsequently, Mr. Small filed for the instant writ of prohibition.

## II.

### STANDARD OF REVIEW

This matter is before the Court on a petition for a writ of prohibition that challenges the circuit court's order denying Mr. Small's motion for summary judgment. We previously have held that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53–1–1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). More specifically, this Court has held:

In determining whether to entertain and issue the writ of

4

prohibition for cases not involving the absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). In light of these established standards, we proceed to consider the merits of the case.

## III.

## DISCUSSION

This case presents two issues for resolution. First, whether it was improper for the circuit court to order Mr. Small to not raise a defense to a counterclaim in the federal action. Second, whether the doctrine of res judicata precluded the circuit court action against Mr. Small. We will address the issues separately below.

### A. *Prohibiting Mr. Small from Raising a Defense*

5

*to a Counterclaim in the Federal Court Action*

Mr. Small contends that the circuit court had no legal authority to preclude him from challenging Mr. Ramsey's motion to amend his complaint in order to assert a counterclaim in the federal litigation. Mr. Small also argues that, in exercising his right in federal court, he did not waive his right to challenge Mr. Ramsey's action in circuit court. We agree with both arguments.

Over one hundred years ago this Court addressed the issue of a state court's authority to interfere with a federal court proceeding. The issue was raised in *Henderson v. Henrie*, 61 W. Va. 183, 56 S.E. 369 (1907). In *Henderson*, the plaintiff filed an action in circuit court to prevent a federal bankruptcy trustee from conveying a real estate deed to the defendant for property purchased by the defendant at a bankruptcy sale. The plaintiff argued that he had a contract with the defendant whereby the defendant agreed to give the plaintiff part of the property purchased. The circuit court granted an injunction against the bankruptcy trustee and enjoined the defendant from accepting the deed. The defendant appealed. This Court framed the issue on appeal as follows: "Then the question is, can the circuit court enjoin the making of the conveyance to [defendant] by the trustee, or enjoin [defendant] from accepting a conveyance of the real estate[.]" *Henderson*, 61 W. Va. at 187, 56 S.E. at 370. The opinion set out the problems that would occur by allowing a state court to interfere with a federal court proceeding:

If this rule should prevail, there would be no end to the

6

embarrassments, conflicts, and complications which would necessarily flow from it.  Upon the one hand we would have a court of one jurisdiction commanding that a certain thing be done, and upon the other hand another court of an entirely separate and distinct jurisdiction forbidding it.  It does not follow, because the circuit court has jurisdiction to entertain this cause, that it can enjoin the trustee from conveying the property in accordance with the decree of the federal court.  The action of the circuit court in this regard is sought to be justified upon the ground that it does not operate to affect the jurisdiction of the court, the proceedings of which are asked to be enjoined, but that it only operates upon the parties.  It is true it operates upon the parties, but it affects the carrying into execution of the decree of the district court.

*Henderson*, 61 W. Va. at 188, 56 S.E. at 370-71.  In view of problems caused by allowing a state court to interfere with a federal court proceeding, the opinion in *Henderson* held the following in Syllabus point 3:

A state court has no jurisdiction to enjoin a proceeding or judgment of a federal court.  The jurisdictions are separate and independent, and it is essential to the independence and efficiency of each that they be exempt from interference and control one by the other.

61 W. Va. 183, 56 S.E. 369.

The holding in *Henderson* is consistent with other federal decisions.  For example, in *Donovan v. City of Dallas*, 377 U.S. 408, 84 S. Ct. 1579, 12 L.Ed.2d 409 (1964), property owners filed an action in a Texas court seeking to prevent the City of Dallas from expanding an airport runway and issuing bonds for that purpose.  The property owners eventually lost the state court case.  Subsequently, some of the property owners joined other

7

litigants to assert a similar cause of action against the City of Dallas and other defendants in a federal district court. The federal plaintiffs alleged that the runway expansion and bond sale violated federal and state laws. After the suit was filed in federal court, the City of Dallas requested the Texas Court of Civil Appeals to issue a writ prohibiting the federal plaintiffs from prosecuting their case and enjoining them from filing any future litigation to contest the runway expansion or bond sale. The court granted the prohibitory relief. After some of the plaintiffs challenged the state appellate court's order in federal court, they were held in contempt by the state appellate court. Eventually, the case reached the United States Supreme Court. The issue framed by that Court was "whether a state court can validly enjoin a person from prosecuting an action in personam in a district or appellate court of the United States which has jurisdiction both of the parties and of the subject matter." *Donovan*, 377 U.S. at 408, 84 S. Ct. at 1580, 12 L. E.2d 409. The Court answered the question in the negative:

> Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. . . . An exception has been made in cases where a court has custody of property, that is, proceedings in rem or quasi in rem. . . . [W]here the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other. It may be . . . that the state-court judgment in favor of Dallas in the first suit barred the issues raised in the second suit, a question as to which we express no opinion. But plaintiffs in the second suit chose to file that case in the federal court. They had a right to do this. . . . While Congress has seen fit to authorize courts of the United States to restrain state-court proceedings in some

8

special circumstances, it has in no way relaxed the old and well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings in in personam actions like the one here. And it does not matter that the prohibition here was addressed to the parties rather than to the federal court itself. For the heart of the rule . . . is that where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. . . . The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum.

*Donovan*, 377 U.S. at 412-13, 84 S. Ct. at 1582-83, 12 L. Ed. 2d 409 (internal quotations and citations omitted). *See General Atomic Co. v. Felter*, 434 U.S. 12, 18-19, 98 S. Ct. 76, 79, 54 L. Ed. 2d 199 (1977) ("The right to pursue federal remedies and take advantage of federal procedures and defenses in federal actions may no[t] . . . be restricted by a state court[.]"); *Riggs v. Johnson Cnty.*, 73 U.S. 166, 195, 18 L. Ed. 768 (1867) ("State courts are . . . destitute of all power to restrain either the process or proceedings in the national courts."); *St. Paul Fire & Marine Ins. Co. v. Lack*, 443 F.2d 404, 407 (4th Cir. 1971) ("The rule is well established that where federal and state courts have concurrent jurisdiction over actions involving an identical issue and both are in personam the actions may proceed simultaneously and neither court may enjoin the other proceeding."); *Niemczyk v. Coleco Indus., Inc.*, 581 F. Supp. 717, 718 (N.D.N.Y. 1984) ("[I]t is equally well established that a state court cannot enjoin a person or corporation from prosecuting an in personam action in a federal court which has jurisdiction over the parties and subject matter."); *President's Co.*

9

*v. Whistle*, 812 P.2d 1194, 1196 (Colo. App. 1991) ("State courts do not possess any power to restrain or enjoin federal court proceedings even though they may share concurrent jurisdiction in *in personam* actions."); *Bagsby v. Gehres*, 169 S.W.3d 543, 547 (Mo. Ct. App. 2005) ("A state court lacks subject matter jurisdiction to control the action, process, or proceeding in a federal court."); *Aysseh v. Lawn*, 434 A.2d 1146, 1149 (N.J. Super. Ct. Ch. Div. 1981) ("State courts and federal courts have concurrent jurisdiction over in personam proceedings and neither may restrain such proceedings in the other court.").

In the instant proceeding, the circuit court attempted to control conduct in a federal court, as evidenced by the following relevant provisions in its order:

> 3. Plaintiffs [the Ramseys] are directed to file the necessary Motions to enable the filing of a Counterclaim on behalf of James R. Ramsey, Sr. and an Intervention on behalf of Virginia E. Ramsey in the matter pending before the Honorable Irene Keeley in the United States District Court for the Northern District of West Virginia at docket number 1:10-CV121, styled *Tobby Lynn Small v. James R. Ramsey*, et al;
>
> 4. Defendants (including Small) shall not object to the filing of the Motion to Intervene or the Motion for Leave to Amend Answer and Assert a Counterclaim and, if oral argument is held on these matters, the Defendants in this action shall take no position.

Mr. Ramsey contends that the circuit court had authority to control the conduct of Mr. Small because Mr. Small was a litigant in circuit court. Mr. Ramsey misunderstands the issue raised. Mr. Small is not arguing that the circuit court is without authority to control his conduct in a proceeding within the jurisdiction of that court. The issue here is that the circuit

10

court attempted to control the conduct of Mr. Small in a forum over which it had no jurisdiction, *i.e*., a federal court. The above authorities clearly establish that the circuit court simply had no authority to control Mr. Small's conduct in the federal litigation. Moreover, the circuit court could not sanction Mr. Small, through imposition of a waiver of an affirmative defense, for exercising his rights in federal court. The Supreme Court's decision in *Donovan* expressly prohibits such unlawful retaliation. *See Bagsby v. Gehres*, 169 S.W.3d 543, 547 (Mo. Ct. App. 2005) ("[A] state court may not hold a litigant in contempt for pursuing a right to federal-court remedies."); *Ex parte Evans*, 939 S.W.2d 142, 144 (Tex. 1997) ("Because the trial court had no authority to enjoin Evans from filing a federal court lawsuit, the court's judgment of contempt against Evans for filing that lawsuit is void.") *Appleton Papers, Inc. v. Home Indem. Co.*, 612 N.W.2d 760, 768 (Wis. Ct. App. 2000) ("Under the Supremacy Clause and the general rule in *Donovan*, however, sanctions may not include enjoining a party from pursuing federal remedies in federal court.").

The above authorities make clear that the circuit court exceeded its authority in attempting to restrict Mr. Small's conduct in federal court and in sanctioning him for exercising his rights in federal court.

### B. Application of the Doctrine of Res Judicata

Having determined that the circuit court improperly ordered Mr. Small to not raise the defense of failure to timely file a compulsory counterclaim in federal court, we will now consider the merits of the compulsory counterclaim issue. Mr. Small contends that he

11

was entitled to summary judgment because Mr. Ramsey's state cause of action was a compulsory counterclaim that had to be litigated in the federal lawsuit under Rule 13(a) of the Federal Rules of Civil Procedure. Mr. Small also argues that Mr. Ramsey's action is barred by the doctrine of res judicata as a result of the termination of the federal litigation.[10] We will address the issues separately.

**1. Compulsory counterclaim under federal Rule 13(a).** As an initial matter, we need to briefly address the propriety of litigating a counterclaim in federal court while simultaneously litigating the same operative facts in state court. It has been recognized that "if a party asserts a claim in a state court that should be a compulsory counterclaim in an already pending federal action, the federal court cannot enjoin the prosecution of the state proceeding." 6 Wright, Miller, and Kane, *Federal Practice and Procedure*, § 1418 (2010). In other words, "[w]here the judgment sought is strictly in personam, . . . both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as res adjudicata in the other." *Penn Gene. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195, 55 S. Ct. 386, 389, 79 L. Ed. 850 (1935). *See Carter v. Bedford*, 420 F. Supp. 927, 929 (W.D. Ark. 1976); *Nolen v. Hammet Co., Inc.*, 56 F.R.D. 361, 362 (D.S.C. 1972). Thus, Mr. Ramsey could litigate his claim against Mr. Small in state court and simultaneously in federal

---

[10]Mr. Small also has argued that Mrs. Ramsey's derivative claim for loss of consortium fails because Mr. Ramsey's claim is barred.

12

court as a counterclaim, if timely presented. However, the judgment of the first court to resolve the claim on the merits, by verdict or settlement, would bar further litigation of the same operative facts in the other court. This issue was addressed succinctly in *Kline v. Burke Constr. Co.*, 260 U.S. 226, 43 S. Ct. 79, 67 L. Ed. 226 (1922), as follows:

> [A]n action brought to enforce [personal] liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case.

*Kline*, 260 U.S. at 230-31, 43 S. Ct. at 81, 67 L. Ed. 226.

Although Mr. Ramsey was unable to litigate a counterclaim in the federal case, because he untimely asserted the claim, he may still be barred from asserting the same operative facts in state court. To resolve this issue, we first must determine whether Mr. Ramsey's claim for relief in circuit court was a compulsory counterclaim in the federal litigation. The standard for assessing whether a claim for relief is a compulsory counterclaim is set out under federal Rule 13(a):

> (a) Compulsory Counterclaim.

> (1) In General. A pleading must state as a counterclaim any claim that–at the time of its service--the pleader has against an opposing party if the claim:

13

> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

The Fourth Circuit has indicated that the following four inquiries are relevant in considering whether a counterclaim is compulsory:

> (1) whether the issues of fact and law in the claim and counterclaim are essentially the same; (2) whether res judicata would bar a subsequent suit on the counterclaim absent the compulsory counterclaim rule; (3) whether the same evidence would support or refute the claim and the counterclaim; and (4) whether there is a logical relationship between the claim and the counterclaim.

*Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 219 (4th Cir. 2006) (citation omitted). It has been held that "[a] court need not answer all these questions in the affirmative for the counterclaim to be compulsory." *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir.1988).

In the instant case, Mr. Ramsey does not claim that his "suit and the litigation pursued by [Mr.] Small in Federal Court arose out of separate or distinct transactions or occurrences." That is, Mr. Ramsey *concedes* that his state cause of action arose out of the same transaction or occurrence that was the subject matter of Mr. Small's federal claim.[11] However, Mr. Ramsey contends that his claim against Mr. Small was not compulsory under

---

[11]This point had to be conceded by Mr. Ramsey because the language of his complaint expressly attributes his damages to the accident that was the subject of Mr. Small's federal claim.

14

Rule 13(a)(1)(B) because the federal district court could not acquire jurisdiction against Mrs. Ramsey. A variation of this argument was raised and rebuffed by the federal district court when it denied Mr. Ramsey's motion to amend his complaint to assert a counterclaim.[12] We also reject this contention.[13]

---

[12]The district court rejected the argument as follows:

> Ramsey's argument is that he delayed amending his answer because he believed that his counterclaim was not compulsory pursuant to Fed.R.Civ.P. 13(a) and that, as such, the best way for him to preserve Mrs. Ramsey's derivative claim for loss of consortium was to proceed with a jointly initiated separate suit. This explanation, however, provides little by way of demonstrating diligence in pursuing his proposed amendment in this Court. Notwithstanding any interpretation of Fed.R.Civ.P. 13, the strategy that Mr. and Mrs. Ramsey now seek to pursue—filing a counterclaim and, subsequently, a motion to intervene—was, as the parties readily acknowledge, available well before the March 18, 2011 deadline for joining parties and amending pleadings. Indeed, the separate suit that the Ramseys filed in federal court on February 1, 2011 amply demonstrates that they had the requisite evidence to support this proposed counterclaim more than a month prior to this Court's deadline.
>
> . . . Accordingly, as Ramsey's motion does not explain why his counterclaim could not have been asserted through a timely amendment pursuant to this Court's scheduling order, the Court finds that he has failed to demonstrate good cause to amend his pleading as required by Fed.R.Civ.P. 16(b) and DENIES his motion to amend.

*Small v. Ramsey*, No. 1:10CV121, 2012 WL 405049 at 2 (N.D. W. Va. Feb. 8, 2012).

[13]Mr. Small correctly points out that Rule 13(a)(1)(B) is concerned with acquiring jurisdiction over a *defendant*, as a result of a counterclaim, not a plaintiff. Mrs.

(continued...)

Mr. Ramsey's circuit court complaint set out a cause of action by Mrs. Ramsey for loss of consortium. It is generally recognized that "[i]n a procedural context, the derivative claim for loss of consortium is a mere incident to a cause of action and not the subject of an action itself." *Stokes v. Southeast Hotel Properties, Ltd.*, 877 F. Supp. 986, 1000 (W.D.N.C. 1994). *See Johnson v. Unique Vacations, Inc.*, 498 Fed. Appx. 892, 896 n.4 (11th Cir. 2012) ("Because Johnson does not have an actionable tort against defendants, the district court properly concluded that Cantu's loss of consortium claim fails as a matter of law."); *McLaurin v. Vulcan Threaded Products, Inc.*, 410 Fed. Appx. 630, 633 n.3 (4th Cir. 2011) ("Mrs. McLaurin's loss of consortium claim is derivative and dependent on Mr. McLaurin's ability to recover for negligence or breach of warranty. Because we find that Mr. McLaurin cannot succeed on either of his claims, we affirm the district court's dismissal of the loss of consortium claim."); *Barker v. Halliburton Co.*, 645 F.3d 297, 299 (5th Cir. 2011) ("Thus, when a husband asserts a loss of consortium claim, he must establish that the tortfeasor was liable for the tort claim of his physically injured wife."); *Pippin v. Hill-Rom Co., Inc.*, 615 F.3d 886, 891 (8th Cir. 2010) ("Because Lola Pippin's claim for loss of consortium is derivative of Pippin's negligence claim, the failure of the negligence claim

---

[13](...continued)
Ramsey's intervention in the counterclaim proceeding would have been as a plaintiff, and not as a defendant. *See generally Ponderosa Dev. Corp. v. Bjordahl*, 787 F.2d 533, 536 (10th Cir. 1986); *In re U.S. Eagle Corp.*, 484 B.R. 640, 650 (D.N.J. 2012); *Bell Tele. Labs., Inc. v. International Bus. Machs. Corp.*, 630 F. Supp. 373, 378 (D.Del. 1984) ("Rule 13(a) provides exceptions if the Court cannot obtain jurisdiction over all necessary parties[.]").

disposes of Lola's claim as well.").[14]  As a consequence, "[a] claim for loss of consortium must be tried together with the underlying personal injury claim. By failing to try [a] consortium claim with [a spouse's] personal injury claim, [a party] is . . . estopped from bringing such a claim as a separate lawsuit."  *Kirchoff v. American Cas. Co. of Reading, Pennsylvania*, 779 F. Supp. 131, 133 (D.S.D. 1991).  Because a spouse's loss of consortium claim must be brought with the substantive underlying claim of the other spouse, federal courts have jurisdiction to consider a loss of consortium claim.  *See Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 816 (8th Cir. 1969) ("We conclude that the Hatridge claims are so intertwined and so interdependent that federal jurisdiction of the [husband's] claim appropriately promotes and supports federal jurisdiction of the [wife's loss of consortium claim] or, perhaps more accurately, prevents separation of the two for forum shopping purposes.").  In fact, federal courts have recognized that jurisdiction over a loss of consortium claim is authorized under 28 U.S.C.A. § 1367(a).[15]  *See Bates v. Harvey*, 518

---

[14]We have recognized that "[i]t is inherent in the nature of a derivative claim that the scope of the claim is defined by the injury done to the principal.  [T]he derivative cause of action for loss of consortium cannot provide greater relief than the relief permitted for the primary cause of action."  *West Virginia Fire & Cas. Co. v. Stanley*, 216 W.Va. 40, 54, 602 S.E.2d 483, 497 (2004) (internal quotations and citations omitted).

[15]This statute provides the following:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such

(continued...)

F.3d 1233, 1235 (11th Cir. 2008) ("Gary Bates asserted a claim for loss of consortium under Georgia state law, over which the district court exercised supplementary jurisdiction pursuant to 28 U.S.C. § 1367(a)."); *Monroe v. Brown*, 256 F. Supp. 2d 1292, 1294 (M.D. Ala. 2003) ("Mr. Monroe is a pendent party with a loss-of-consortium claim. His claim undoubtedly satisfies the requirements of subsection (a) to § 1367 as it involves the same set of facts, occurrences, witnesses, and evidence as Mrs. Monroe's claim does; it, therefore, forms part of the same case or controversy. Thus, the court has supplemental jurisdiction over Mr. Monroe's claim[.]"); *Daigle v. Borden Chem., Inc.*, No. CIV.A. 03-2100, 2003 WL 22671726, at*3 (E.D. La. Nov. 7, 2003) ("Daigle's consortium claim is derivative of and closely related to her husband's personal injury claim. Because supplemental jurisdiction is appropriate, Mona Daigle's claim need not meet the amount in controversy requirement."); *Dickerson v. Monroe Cnty. Sheriff's Dept.*, 114 F. Supp. 2d 187, 192 (W.D.N.Y. 2000) ("Although Mrs. Dickerson has not established an independent basis for federal jurisdiction, it is now clear under the provisions of 28 U.S.C. § 1367(a) that this Court has authority to exercise supplemental jurisdiction over her [loss of consortium] claim."); *Brewer v. Petroleum Suppliers, Inc.*, 946 F. Supp. 926, 934 (N.D. Ala. 1996) ("Mr. Brewer's loss of

---

[15](...continued)
original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C.A. § 1367(a).

18

consortium claim arises out of the same alleged acts of the defendants, and will involve substantially the same underlying questions and evidence. Therefore, Mr. Brewer's claims for loss of consortium will not be dismissed for lack of subject matter jurisdiction.").

In sum, Mr. Ramsey's circuit court claim was a compulsory counterclaim in federal court. Mrs. Ramsey's loss of consortium claim did not transform Mr. Ramsey's compulsory counterclaim claim into a permissive counterclaim. To the extent Mrs. Ramsey wanted to assert her loss of consortium claim in federal court, she was permitted to do so if Mr. Ramsey timely asserted his compulsory counterclaim.

**2. Res judicata under federal law.** Having determined that Mr. Ramsey's circuit court claim was a compulsory counterclaim in the federal litigation, we must now address Mr. Small's contention that the state claim is barred by the doctrine of res judicata.[16] It has been recognized that "[t]he preclusive effect of a prior federal court judgment is controlled by federal res judicata rules." *Jefferson Marine Towing, Inc. v. Kostmayer Constr., LLC.*, 32 So. 3d 255, 259 (La. Ct. App. 2010). *See Anderson v. Phoenix Inv. Counsel of Boston, Inc.*, 440 N.E.2d 1164, 1167 (Mass. 1982) ("When a State court is faced with the issue of determining the preclusive effect of a Federal court's judgment, it is the Federal law

---

[16]"[F]ederal courts are not in agreement on the legal theory underpinning the compulsory counterclaim bar. Some decisions have used theories of claim (res judicata) or issue (collateral estoppel) preclusion[.]" 3 Moore, *Federal Practice* § 13.14[1] (3d ed. 2013).

19

of res judicata which must be examined."). The Fourth Circuit has held the following regarding res judicata under federal law:

> Res judicata or claim preclusion bars a party from suing on a claim that has already been litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action. For res judicata to prevent a party from raising a claim, three elements must be present: (1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action. In finding that the second suit involves the same cause of action, the court need not find that the plaintiff in the second suit is proceeding on the same legal theory he or his privies advanced in the first suit. As long as the second suit arises out of the same transaction or series of transactions as the claim resolved by the prior judgment, the first suit will have preclusive effect.

*Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (internal quotations and citations omitted).

We are satisfied that res judicata, as recognized by the Fourth Circuit in *Ohio Valley*, precludes Mr. Ramsey from bringing the instant cause of action against Mr. Small. The record in this case is clear. Mr. Ramsey, through his insurer, settled Mr. Small's claim against him. The federal claim against Mr. Ramsey was dismissed as a result of the settlement. Mr. Ramsey's state court claim is based upon the same facts for which he entered the settlement agreement. Res judicata precludes Mr. Ramsey from seeking to establish that

20

Mr. Small is liable to him under the same operative facts as the federal claim.[17] In *Horne v. Woolever*, 163 N.E.2d 378 (Ohio 1959), the Ohio Supreme Court addressed the exact same issue.

In *Horne*, the defendant previously filed an action against the plaintiff in federal court to recover damages for injuries the defendant had sustained in an automobile accident.[18] The plaintiff filed an answer to the federal cause of action, but did not assert a counterclaim. Shortly after the federal action began, the plaintiff filed the instant case in a state court. The plaintiff's cause of action grew out of the motor vehicle accident that was the subject of the federal case. Subsequent to the plaintiff filing the state court cause of action, the plaintiff paid the defendant a sum of money to settle the federal case with the

[17]Mr. Ramsey attempts to argue that the decision in *Reynolds v. Hartford Accident & Indemnity Co.*, 278 F. Supp. 331 (S.D.N.Y. 1967), allows an insured to bring a separate action at any time when the insurer refuses to bring a counterclaim. Mr. Ramsey misinterprets *Reynolds*. It is true that *Reynolds* suggested that an insured should be allowed to retain private counsel to bring a counterclaim, when an insurer declines to do so. However, *Reynolds* did not hold that such a counterclaim would not be subject to res judicata principles if the underlying original action terminated before the insured's counterclaim was prosecuted. In fact, *Reynolds* recognized in that case that the underlying original case was "likely to be reached for trial sooner than the plaintiffs' case and any determination is likely to have the effect of deciding their action through the principles of collateral estoppel." *Reynolds*, 278 F. Supp. at 334. To avoid the preclusive effect of the resolution of the underlying original case, *Reynolds* suggested the insured plaintiffs seek to consolidate their claim with the underlying original litigation. We also reject Mr. Ramsey's reliance on *Ranger Insurance Co. v. General Accident Fire and Life Assurance Corp., Ltd.*, 800 F.2d 329 (3d Cir. 1986), which held that the insurer of a county was not collaterally estopped from litigating the marital status of the county's employee in an action against a second insurer.

[18]The case was actually removed from a state court to the federal court.

defendant. The federal case was therefore dismissed. After the federal case was resolved,

the defendant filed a motion to dismiss the state court cause of action on the grounds of res

judicata. The trial court determined that the state court cause of action should have been filed

in the federal court action, as a compulsory counterclaim, and that because this was not done,

the doctrine of res judicata required dismissal of the state court cause of action. The issue

presented to the Ohio Supreme Court was "whether, as the trial court held, the judgment of

dismissal 'with prejudice' in the federal court barred as res adjudicata the cause of action set

forth in plaintiff's petition." *Horne*, 163 N.E.2d at 381. The opinion affirmed the trial court

decision as follows:

> Generally, a consent judgment operates as *res adjudicata* to the same extent as a judgment on the merits.
>
> . . . .
>
> Thus, in an instance where Rule 13 of the Federal Rules of Civil Procedure or a similar applicable rule or statute requires a defendant to assert a claim that such defendant has as a counterclaim in an action and he does not assert it, a consent judgment dismissing the action with prejudice will bar as *res adjudicata* assertion of that claim in any subsequent action.
>
> From the words of Rule 13 . . ., it is apparent that, in an action in a federal court for personal injuries resulting from an automobile collision, that rule requires the party sued to assert as a counterclaim any cause of action that he may have, when he serves his answer, against the party suing for damages resulting from that collision. . . . Since such a cause of action or "claim" of the party sued arises out of the same collision as does the cause of action of the party suing, it obviously arises out of the same "occurrence, that is the subject matter of the . . . claim" of the party suing. . . . It is apparent therefore that the cause of action set forth in plaintiff's petition is one that Rule 13 would

22

have required plaintiff to assert as a counterclaim in defendant's federal court action. . . .

   . . . .

To the extent to which a judgment of a federal court operates as *res adjudicata* in that court, it operates as *res adjudicata* in the courts of this state.

*Horne*, 163 N.E.2d at 382-83 (footnotes omitted). *See Creative Walking, Inc. v. American States Ins. Co.*, 25 S.W.3d 682, 689 (Mo. Ct. App. 2000) ("[T]his claim against American States could have been brought before the federal court and is now barred by the doctrine of res judicata."); *Suddarth v. Household Commercial Fin. Servs,, Inc.*, No. M2004-01664-COA-R3,CV, 2006 WL 334031, at*6 (Tenn. Ct. App. Feb. 13, 2006) ("The Suddarths' claims for fraud and conspiracy to commit fraud in the present action arose out of the same transaction or occurrence as Household's initial claim and, therefore, pursuant to Fed. R. Civ. P. 13(a) the Suddarths were required to assert it as a counterclaim in the former action, and having failed to do so are forever barred from raising the claim in another action, including the present action.").

The decision in *Horne* and the above analysis demonstrate that Mr. Ramsey's complaint against Mr. Small is barred by the doctrine of res judicata.[19] As a consequence,

---

[19]In the joint summary response filed by Mr. McNeal; Jack B. Kelley, Inc.; and Amerigas Propane, they have asked this Court to apply res judicata to the Ramseys' claims against them. These respondents contend that Mr. Ramsey's failure to bring an action against them in federal court precludes the state court action. We disagree. In the federal
(continued...)

23

the circuit court should have granted Mr. Small's motion for summary judgment.

## IV.

## CONCLUSION

In this proceeding, we have determined that the circuit court exceeded its authority in prohibiting Mr. Small from raising a defense to Mr. Ramsey's counterclaim in the federal litigation and in sanctioning him for exercising his right to assert a defense. We further find that the doctrine of res judicata bars the Ramseys' action against Mr. Small. Therefore, the circuit court erred as a matter of law in denying Mr. Small's motion for summary judgment. In view of these findings, the writ prayed for is granted, and the circuit court is instructed to enter summary judgment in favor of Mr. Small and to dismiss the Ramseys' action against him.

Writ Granted.

---

[19](...continued)
action brought by Mr. Small, he named Mr. McNeal; Jack B. Kelley, Inc.; and Amerigas Propane as defendants, along with Mr. Ramsey. In this posture, Mr. Ramsey could have filed a crossclaim, not a counterclaim, against the defendants. "Although a crossclaim has the characteristics of a compulsory counterclaim, a crossclaim is actually permissive and is not barred by res judicata, waiver, or estoppel from being asserted in a later action, as would be if the claim were a compulsory counterclaim under Rule 13(a)." Franklin D. Cleckley, Robin Jean Davis, and Louis J. Palmer, Jr., *Litigation Handbook on the West Virginia Rules of Civil Procedure* § 13(g), p. 435 (4th ed. 2012).